## SPARKS vs. PURDY, et al.

1. The Justices of the County Courts have the control of the county buildings, and have power summarily to expel intruders from such buildings. But where a person has had possession of a public building by consent or permission of the court, he should be notified and have a reasonable time to leave; and if summarily expelled by order of the justices, they will be liable.

2. An order of the County Court for the expulsion of a person in possession of the public buildings, is not a judicial proceeding, so as to exempt the justices from liability even for an improper or illegal order.

3. Every unlawful taking of the chattels of another, with the intent to convert them to the use of any other than the owner, and every unlawful taking which destroys or alters the nature of the chattels, is a conversion.

4. But the bare removal of the chattels of another without any intent to deprive him of their possession, and which does not affect their condition, is no conversion.

5. The return of chattels after a conversion will not defeat the right of action, but will only go in mitigation of damages.

### ERROR to St. Louis Circuit Court.

LESLIE AND LORD, *for Plaintiff in error, insist:*

1. The County Court of St. Louis county is not a court within the legal signification of that

term, or if a court, is one of special and limited jurisdiction, and for any act done, ordered or directed beyond its jurisdiction, the justices ordering or directing it are responsible. See 2nd and 3rd instructions given, and 2nd refused.

1st. The St. Louis County Court is not a place where "justice is judicially administered;" and this is the definition of a court which we find in the books. They are mere trustees or directors of a corporation. The only judicial power they ever had was taken from them when probate powers were transfered to another tribunal. See Rev. Stat.—Courts of St. Louis—Probate Court, &c.; Chitty's Black., vol. 3, 23; Tho. Coke, 3 vol., 322; R. S. Mo. 1835, p. 151; et seq., 9–10, 11 sub. of sec. 15, p. 157; see Constitution, of judicial powers, sec. 12.

The machinery of a court is not furnished them; they cannot hold pleas; it may be that the County Court has power to enter up judgments against collectors, &c., but this is a power not unusual to all bodies having control and custody of public funds, as for example—Treasurers in New York, &c. R. S. Mo., County Treasurers, art. 1, 2, 3.

2nd. If a court, it is one of the inferior courts of special and limited jurisdiction, created by the statute, and whose powers are solely conferred by the statute creating it. There is a distinction between superior courts of general jurisdiction, and inferior courts of special and limited jurisdiction, as to both subject matter, place, and person, and in all these respects, the County Court of St. Louis county is an inferior court, exercising special and limited power.

The County Court in Mississippi is held to be an inferior tribunal. So in North Carolina. So in Massachusetts. The Court of Common Pleas a similar court "have the powers precisely given to them by statute and no other." Walk. Rep., 75; 1 Mass. Rep., 457.

3rd. Judges of inferior courts are amenable for any act done, or ordered, or directed by them over the subject matter of which they have no jurisdiction; 15 John. Rep., 157. In Cable vs. Cooper, Van Ness, Justice, says, "every tribunal proceeding under limited and special powers decides at its peril; and hence it is that process issuing from a court not having jurisdiction is no protection to the *court*, to the *attorney*, or to the *party*, nor even to a *ministerial officer*, who innocently executes it. This, (he says,) is a stern and sacred principle of the common law, which requires to be steadily guarded and maintained."

The distinction between courts of general and limited jurisdiction, has been recognized from the earliest days. In Yates vs. Lansing, it is said, "that when courts of special and limited jurisdiction exceed their powers, the whole proceedings are *coram non judice* and void, and all concerned in such proceedings are held to be trespassers." 5 John. Rep., 290; see 11 John. R., 175; 3 Cow., 209; 2 John., 51.

From all these cases it will be seen that the proceedings of any tribunal not having jurisdiction of the subject matter which it professes to decide, are void. Metcalf & Perkins' Digest, p. 629, vol. 1; 2 Strange, 993; 10 Coke, 68; 5 Harr. & John., 42; 8 Cranch, 9; Paine, 55.

Is there any fact in this case which sustains the jurisdiction of the County Court over the matter in which this order was made? We see none; and if there be none, then the court clearly erred in giving the first instruction; and as to the two last given, we suppose there can be no question.

2. The third instruction asked for should have been given.

If the plaintiff had lawful possession of the room, he could not be dispossessed unless by some legal and competent authority after notice, or being impleaded. The instructions given on the part of the defendants, and refused on the part of the plaintiff together amount to this proposition, that although the plaintiff had lawful possession of the room, yet if the defendants wanted it for the use of the county, they might forthwith remove his goods and take possession; that such an exercise of authority, *though illegal* for such a purpose, would not subject them to this action. Can the proposition be maintained? It asserts that a landlord may enter upon the tenant, remove his property without incurring any liability for so doing. This is error. Give the sanction of law to the proposition asserted by the Judge of the Circuit Court, and you give to the County Courts of every county in this State a power more potent than can be exercised by the sovereign power of

the State; the county judges, who are the mere servants and agents of the county in the management of its property, decide that the property of the county is detained in the possession of a person who they think has no right to it, and having adjudicated the case, in a tribunal for that purpose, unknown to the laws, without impleading the party, without any form of trial, they may proceed to take possession of the property; and upon the same principle, the judge being satisfied that a man is indebted to the county, they make an order that he pay, and failing to do so, they direct the Marshal to sieze and sell his property to make the debt, and their official character will screen them from the penalty of the outraged law; that is, having made their order as judges of the County Court, the penalty against law breaches cannot be visited upon them.

The first instruction also prevents this question; whether under the circumstances of this case there was a conversion? We say, the taking was wrongful, and that it is of itself a conversion. 14 John. R., 431.

The unlawful exercise of authority over goods without any intention to apply them to the use of the party exercising such authority, is a conversion. 5 Cowen, 325, and cases there cited; 2 Esp. 180.

If the property was wrongfully taken, there was a conversion; and if it had been actually restored and received again by the plaintiff, this action would be maintainable.' The only effect of the restoration and acceptance by the party, would be to mitigate the damages; the action would be sustained.

GEYER, *for Defendant in error, insists:*

1. The County Court of St.Louis county has by law the possession, control and management of the court-house, to assign and appropriate its apartments to use of the several courts to be holden in the county, and of the county officers; to protect the building from intrusion, waste and damage, and to make and enforce such orders as shall be necessary to maintain such possession and control. The court therefore had competent authority to make the order, under which the property of the plaintiff below was removed from the room of the court-house, and neither the officer who executed the order, nor any member of the court by which it was made, committed any trespass. See Rev. Code, tit. Courts, sec. 15, 35; county buildings, sec. 17, and special act establishing a probate court in St. Louis county, and for other purposes.

3. The justices of the County Court, having acted judicially and within the sphere of the jurisdiction of the court, are not liable to the action of the plaintiff below for any thing done by the Marshal under the order, however erroneous that order may have been. Stone and others vs. Graves, 8 Mo. R., 148; Lenox vs. Grant, Ib., 254.

3. The defendants can in no case be rendered liable for any act done by the Marshal, or other person, which was not directed to be done by the terms of the order of the court, or by the defendants.

4. Upon the assumption that the order of the court was unlawful, and beyond the jurisdiction and power of the court, and that the Judges and the Marshal were guilty of a trespass in removing the goods of the plaintiff, the facts show no conversion upon which to maintain the action of trover; a mere wrongful asportation of a chattel does not amount to a conversion, unless the taking or detention of the chattel is with the intent to convert it to the takers own use, or that of some third person, or unless the act done has the effect either of destroying or changing the quality of the chattel. Shipwrick vs. Blanchard, 6 T. R., 298; Foulds vs. Willoughby, 1 Dowling P. C., N. S, 86; 3 Stephens N. P., 2667; same case, 3 Meeson and Welsley, 540; 3 Stephens N. P., 2683; Langstaff vs. Meagoe, 4 Nev. & M., 211; Hayward vs. Seaward, 1 M. & Le., 459; Samuel vs. Maris, 6 Car. & P., 620; Cockson vs. Winter, 2 Man. & R., 313; Wallace vs. King, 2 H. Bl., 137; Fairman vs. Grimble, 2 C. & P., 266.

5. The instructions of the court as given are at least as favorable to the plaintiff as he could

consistently with the law of the case roquire; the errors committed in favor of the plaintiff are not now the subject of enquiry.   The instructions asked by the plaintiff and refused, assume that wherever trespass *de bonis asportatis* will lie, trover will also lie, that is, that every wrongful taking of a chattel, amounts to a conversion.   A doctrine discountenanced in the adjudged cases above referred to.

SCOTT, J., *delivered the opinion of the Court.*

This was an action of trover brought in the Circuit Court of St. Louis county by Sparks against Purdy and others, Justices of the County Court of said county, for removing property belonging to Spaiks, from a room in the court-house of that county.

Sparks was collector of St. Louis county for several years, and whilst holding that office, he occupied a room of the court-house, at the request of one of the jndges, who used the same in the discharge of some official duties, and with a knowledge on the part of all the judges, without objection.   The court replaced Sparks as collector, and on the day that he was superseded in office, made the following order: "St. Louis County Court, special term, Monday, April 15, 1844.   Ordered that the Marshal take immediate possession of the room in the east front of the court-house, now occupied by Mr. Sparks, and that the furniture, books, &c., now in said room belonging to said Sparks, be by him removed out of the same to-morrow evening, unless the said Sparks will himself do it."   This order being shown immediately to Sparks, he said he could not *then* give up the room as he had no place to put his property in.   On the next day the room was taken possession of by a deputy Marshal, and the property mentioned in the order, together with some mining tools and surveying instruments, was removed to the portico in front of the room.   After their removal, the goods were pointed out to Sparks by the officer.   The goods were afterwards placed, it does not appear by whom, in an old room of the court-house; admittance into the room was obtained by raising a sash and entering at a window in the absence of Sparks; plea not guilty, verdict for defendants.

The court charged the jury as follows:

"Trover is a form of remedy adapted to the recovery of damages for an injury occasioned to a person having the property in, or right of possession of personal property, by a wrongful conversion by the defendant, of such property to his own use.

"'The foundation of the action is not the acquisition of the property by the defendant, but the deprivation of the property to the plaintiff, and

the action may be brought against any person who was a party to the conversion, although the goods were actually converted by another.

"Proof of the direct wrongful taking of the goods and chattels, is of itself evidence of a conversion, therefore, if the jurors believe from the evidence that the property in the plaintiff's declaration mentioned, was at the time of the alleged conversion the property of the plaintiff, or that he was lawfully possessed thereof, and that the said property by the act or procurement of the defendants, or either of them, was taken out of the possession of the plaintiff, such taking is a conversion of the property so wrongfully taken; but if the wrongful taking of the property, did not interfere with the plaintiff's dominion over the property, nor alter its condition, it was not a conversion. And however temporary the conversion may have been, it will suffice to render the defendant liable, for a conversion which has once taken place cannot be cured. Therefore under the rule here stated, if the jurors believe from the evidence that the property in question was wrongfully taken by the defendants, or either of them, or was caused to be so taken by them, or either of them, from the possession of the plaintiff, he is entitled to recover in this action, notwithstanding the jurors may believe from the evidence, that the said property afterwards was recovered by the said plaintiff and was returned to him; the return of the property or the recovery thereof by the plaintiff, goes in mitigation only of the damages.

"If the jury find from the evidence that the only conversion of the plaintiff's property in the declaration mentioned consisted in removing the articles of property from a room in the court-house of St. Louis county, and placing them out side of that room, that such removal was made by the Marshal of said county or his deputy, under an order of the county court of said county, and was made for the purpose of taking possession of the room for the use of the county, and that no other possession of the property was taken, and no other dominion over it was exercised, than by removing it from said room, and that the plaintiff was shewn the property so removed, and which was accessible to him to dispose of as he pleased, then the plaintiff is not entitled to recover in this action.

"The defendants as justices of the County Court of St. Louis county, are not liable to the plaintiff for any act done by any person executing an order of said court, nor for any act done which is beyond the extent or direction of such order.

"The defendants are not liable in this action for any order or direction they may have made or given, while they were acting officially as justices of the County Court of St. Louis county, in respect to the property in

question or its removal, nor are they liable in this action for any act done by the Marshal or his deputy under or in pursuance of any such order or direction made by the defendants while acting in their official capacity as justices of said County Court.   But the defendants are liable for any act done or procured to be done by them, in respect to the property in question or its removal, which was not done while they were acting as justices of the St. Louis County Court; therefore, if it shall appear in evidence to the satisfaction of the jury that the defendants or either of them caused or directed the property in question to be taken from the possession of the plaintiff, and that they interfered with the plaintiff's dominion over it, and that at the time they caused or directed said property to be so taken or interfered with, they were not acting in their official capacity, as justices of the said County Court, they are liable in this action."

Which instructions were excepted to by the plaintiff, who prayed the following instructions:

1. The wrongful or unlawful taking of property is of itself a conversion, and if the jury find that the taking was unlawful or wrongful, they will find for the plaintiff.

2. The justices of the County Court under the general power given to them by law, have no power by order or otherwise, to turn any person out of possession of county property, but the county like an individual must proceed according to law; and the law having provided an appropriate remedy, the county servants were bound to persue it, and had no right to cause the plaintiff to be turned out in a summary manner.

3. If the plaintiff, at the time of the removal of the property mentioned in his declaration, or previous to that time, had lawful possession of the room from which that property was removed, the order made by the judge of the County Court was made without authority of law, is void and affords no justification of the defendants in this case.

Which instructions the court refused, and the refusal was excepted to.

The law entrusts the County Court with the control and management of the property, real and personal of the county; and under this power the court superintends the public buildings.   Public convenience requires that a summary power to prevent the illegal occupation of, and to eject trespassers from the places designed for the transaction of the business of the county should exist in some body.   It could never have been the intention of the legislature, that the county courts in the State should proceed by ordinary suit at law in order to obtain possession of the public buildings or parts of them.

The duties of the County Court are various. Some of them are merely ministerial, some judicial; when acting judicially within the sphere of their jurisdiction, they like all other tribunals are protected from suits for errors they may commit. But when they act ministerially, they like other ministerial officers, are liable for a breach of the law. We cannot consider that the making of the order above cited was a judicial act.— The proceeding had none of the characteristics of a judicial one; there were no parties; no notice; no pleadings; no trial; no judgment. It was a mere order respecting the public property, such as an individual might give relative to his own. That a County Court may expel an intruder from the court-house in a summary way, we have no doubt, but under the circumstances of this case, their conduct towards Sparks was harsh and illegal. He was in the occupation of the room as a public officer, with whom they had constant intercourse during their sittings. Such occupation was as convenient to the court as himself. They were fully aware of it, and never objected to it. He is replaced in his office by another, and on the same day without a moments warning an order is made to take possession of the room occupied by him. Would not the court have con·sulted its own dignity, and the spirit of our institutions which exacts ·mild behaviour from all public servants towards those with whom they may have official intercourse? If Sparks had been requested to yield up the possession of the room, and a reasonable time had been allowed him for that purpose, and he had failed to comply with such request, it would have been time enough then, to have used violence. If one with the consent of another place his goods in another's house, can the other without notice or request, remove the goods to an exposed situation or place them beyond his control, but at his peril? There is no principle on which this can be done. Sparks under the circumstances should have been required to yield up possession of the room, and remove his goods, and a reasonable time should have been allowed him for that purpose, and for a want of the observance of these requirements, the proceedings of the court cannot be sustained in law.

Another question in the cause is, whether an action of trover will lie for the injury complained of. There can be little doubt of the correctness of the proposition in general, that whenever trespass for taking goods will lie, that is, where they are taken wrongfully, trover will also lie.— So if there be a deprivation of property to the plaintiff, it will constitute a conversion, though there be no acquisition of property by the defendant. If, as the case says, the wife were to take up a book and her husband desired her to put it in the fire and burn it, and she did burn it, that

would be a conversion, and yet the husband and wife would acquire no property; so if a man takes a horse and rides him, the owner may bring trover for the temporary conversion. Keyworth vs. Hill & wife, 5 Eng. Com. Law Rep., 422. In the case of Reynolds vs. Shuler, 5 Cow., 323, relied on by the plaintiff, goods were illegally distrained and sold, which was clearly a conversion. General observations made in cases like the above, must be taken in reference to the circumstances. A late writer says, a conversion in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff under a claim of title, inconsistent with his own. It may therefore be either direct or constructive; and of course is proved either directly or by inference. Every *unlawful taking* with intent to apply the goods to the use of the taker, or of some other persons than the owner, or having the effect of destroying or altering their nature, is a conversion. But if it does not interefere with the owner's dominion over the property, nor alter its condition, it is not. Upon these principles, it has been held, that if a ferryman wrongfully put the horses of a passenger out of the boat, without farther intent concerning them, it may be a trespass, but it is not a conversion; but if he make any farther disposition of them, inconsistent with the owner's rights, it is a conversion; 2 Greenleaf, sec. 642. These are the principles to be deduced from the numerous cases on this subject. If there is no intent to interefere with the owner's dominion of property, there can be no conversion. The bare removing of one's chattel from one spot to another, without denying his ownership, but on the contrary acknowledging it, cannot be a conversion. It is neither a deprivation of the owner's right, nor is it the use, enjoyment, change or destruction of the property.

The other Judges concurring, the judgment will be affirmed.