(Decided 11th June, 1889.)

HARRISON HOPPER *vs.* MARGARET HAINES, by her next friends WILLIAM YOUNG and GEORGE L. VAN BIBBER.

*Landlord and Tenant—Renting on Shares—Sec. 22 of Art. 53 of the Code—Act of 1868, ch. 292—Act of 1870, ch. 279— Lien on Crops for Rent—Trover and Conversion—Measure of Damages.*

By the Act of 1868, ch. 292, section 22 was added to Article 53 of the Code of Public General Laws, Title "Landlord and Tenant."

Hopper *vs.* Haines.

The added section provided that, "in all cases of renting lands wherein a share of the growing crop or crops shall be reserved as rent, said rent reserved shall be a lien on such crop or crops, which shall not be diverted by any sale made thereof by the tenant, or by the assignment of the tenant in bankruptcy, or by the process of law issued against the tenant." By the Act of 1870, ch. 279, this section was repealed, amended, and re-enacted as section 22, and as amended and re-enacted, was, by section 2 of the Act, made to apply only to certain named counties. HELD:

That section 22, enacted by the Act of 1868, ch. 292, and amended and re-enacted by the Act of 1870, ch. 279, was, after the date of said last mentioned Act, inoperative in all the counties except those named in section 2 of the Act.

A tenant of a farm under a contract to have one-half of the products for his share, being indebted, mortgaged sundry articles of personal property, together with his interest in the wheat crops growing on the farm, to secure such indebtedness. On foreclosure the mortgaged property was sold to various persons, the wife of the tenant becoming the purchaser of his one-half interest in the wheat crop. The wheat was harvested and threshed, and the tenant divided the same, as had been his habit previously, without the supervision or participation of the landlord, into two parcels, and delivered it at the warehouse of R., one parcel for the landlord and the other for the purchaser—in accordance with the direction of each. The landlord took and carried away both parcels. HELD:

1st. That the landlord was answerable in trover to the purchaser for her share of the wheat.

2nd. That if the tenant failed to deliver to the landlord his full share of the crop of wheat, and delivered only a part, the landlord, while entitled to his share of the portion that remained undelivered, was not entitled to take and appropriate to his own use, the portion delivered to the purchaser of the tenant's share.

3rd. That the landlord could not set up as a defence to the action by the purchaser under foreclosure of the mortgage, a parol agreement by the tenant to let him have all the wheat of that year for arrearages of years before.

4th. That the right of the purchaser to recover, as against the landlord, was not affected by the facts that she had not paid for

the wheat she bought, and the trustees' report of the sale of the mortgaged property had not been ratified by the Court.

5th. That the measure of damages was the value of the wheat when taken, with interest from the time of taking to the time of verdict.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*First and Second Exceptions* need not be set out.

*Third Exception.*—The plaintiff offered the three following prayers:

1. That the evidence of the witnesses, White, Roussey and Hopper, as to the quantity of wheat raised upon the defendant's farm in 1884, is not to be considered by the jury in this case, the same being irrelevant to any issue under the pleadings in the case.

2. That the jury are not to consider the evidence of Harrison Hopper to the effect that the witness, John H. Haines, was indebted to him for rent in arrear at the time when he directed Crowley to take the same from Ross' warehouse, and they are not to consider the evidence of the said Hopper, that Haines agreed in 1883, to let him have all the wheat crop of 1884, all such evidence being irrelevant to any issue in this case.

3. That if the jury shall find that the witness, Haines, was tenant to the defendant, Hopper, that there was a sale of said tenant's effects, at which sale the plaintiff, Margaret Haines, became the purchaser of the tenant's one-half interest in the wheat crop, and that said wheat was delivered to her as testified by the witness, Van Bibber, and that said wheat crop was divided by Haines, the tenant, after being threshed, and was by him delivered at the warehouse in Conowingo, and there placed in two separate piles, the one for Mrs. Haines, and the

Hopper *vs.* Haines.

other for the defendant, and shall further find that the defendant sent a boat to said warehouse and removed and disposed of all the wheat in the two piles, then the plaintiff is entitled to recover in this action, although the jury may believe all the said wheat crop was not divided, and that said division was not fairly made by said tenant, and that said Haines was indebted to the defendant for rent in arrear.

4. That if the jury shall believe that the three hundred bushels of wheat in plaintiff's declaration mentioned, was placed in Ross' warehouse at Conowingo, by direction of the plaintiff, Margaret Haines, in a pile to itself, and was the property of the said plaintiff, and that Harrison Hopper, the defendant, or his agents or employés took said wheat from said warehouse without the knowledge and consent of the said plaintiff, and that prior to the institution of this suit he sold the same and has refused to pay for the same, then the plaintiff is entitled to recover in this action such sum as the said wheat was worth at the time of such taking, with such interest upon said sum as they may deem proper to give under the circumstances given in evidence.

The defendant offered the following prayers:

1. If the jury shall find from the evidence, that in the year 1879, John H. Haines rented from the defendant the Dublin farm in Harford County, and agreed in consideration thereof to give to said defendant one-half of all the crops raised upon said farm, and that said Haines continued to occupy said farm on said terms until and during the year 1884; and if they shall further find, that during said year the said Haines executed to James S. Chenoworth the chattel mortgage offered in evidence; and shall further find that said chattel mortgage was foreclosed under and by virtue of due proceedings on the equity side of the Circuit Court for Harford County, and that Messrs. Young and Van Bibber, as trustees, under

and by virtue of said proceedings, sold at public sale to Margaret Haines, the wife of John H. Haines, all the interest of the said John H. Haines in and to fifty acres of wheat then growing upon said farm, if the jury shall so find; and if they shall further find that subsequently thereto the said John H. Haines, as the agent of his said wife, harvested the said wheat and hauled to and stored in the warehouse of Ross, at Conowingo, a large part of said wheat; and if they shall further find that said defendant caused to be removed from said warehouse about five hundred bushels, and sold the same, that then the plaintiff is not entitled to recover.

2. If the jury shall find that there was a contract between Harrison Hopper and John H. Haines, for a rental of the farm of Hopper, that Haines, as tenant, agreed to pay as rent one-half of all crops grown or raised thereon; that the wheat in controversy was raised and cropped during the year 1884, and that so much thereof as said Hopper received was but one-half of the amount so raised and cropped, then the verdict of the jury shall be for the defendant, although at the same time they may find that the plaintiff in this case purchased said wheat, or a portion thereof as claimed, at trustees' sale, as testified to in this case.

The Court, (FOWLER, J.,) granted the plaintiff's prayers, and rejected those of the defendant. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before MILLER, STONE, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*William M. Marine*, and \**Frederick C. Cook*, for the appellant.

*Mr. Cook was not present at the hearing of the case.

*George L. Van Bibber,* *John I. Yellott,* and *William Young,* for the appellee.

IRVING, J., delivered the opinion of the Court.

This case was argued orally at the last term of the Court, and a conclusion was announced, but was afterwards withdrawn, and a re-argument upon notes was ordered in respect to section twenty-two of Art. 53, of the Code of Public General Laws, as added by the Act of 1868, ch. 292, and the effect of the Act of 1870, ch. 279, and subsequent legislation upon it.

The appellant's counsel conducted their case in the lower Court and in this Court, on the theory, that section twenty-two of Article 53, which was enacted by the Act of 1868, was in full force in Harford County, where the transactions took place in the summer and autumn of 1884, which gave rise to this suit. That view has again been pressed in the re-argument upon notes. After the most careful examination and consideration, we are unable to accept this view.

By the Act of 1868, ch. 292, section twenty-two was added to Article 53, of the Code of Public General Laws, title "Landlord and Tenant," to follow section 21. The added section reads thus: "Section 22. In all cases of renting lands wherein a share of the growing crop or crops shall be reserved as rent, said rent reserved shall be a lien on such crop or crops which shall not be diverted by any sale made thereof by the tenant, or by the assignment of the tenant in bankruptcy, or by the process of law issued against the tenant." This section was given general operation throughout the State, and introduced an entirely new element into the relation of landlord and tenant, which was not allowed to remain a general law any longer than the next meeting of the Legislature in 1870, when, by its chapter 279, section

*Mr. Yellott was not present at the hearing of the case.

22, as enacted by the Act of 1868, ch. 292, was repealed, amended and re-enacted as section 22. The section as amended made *advances*, also, which were made on the faith of the crops to be grown, a lien in the same way as the crop rent, but confined the lien given by the section in all cases to *written contracts* of renting. This section, then, as amended and re-enacted, was, by another section of the law, made solely to apply to the counties of Saint Mary's, Prince George's and Charles. The language of the second section of this Act is "the provisions of this Act shall only apply" to the counties just named. We cannot assent to the view of the appellant's counsel that by the language "the provisions of this Act shall only apply," &c., was meant that the repeal of section 22 should only apply to the counties named, and that the amendments supplied by this Act of 1870, would also apply to the counties named in the second section of the Act. If the Legislature had so intended it would not have repealed section twenty-two outright, and in so many words re-enacted section 22, in different language, with different provisions respecting *advances* on the faith of the crop, and the character of the contract, making all the provisions dependent for operation upon the fact whether the contract was in writing. It did not retain section twenty-two and make a section twenty-three which should only be operative in the counties designated; but in express terms it repealed section twenty-two as enacted by 1868, and made an entirely new section twenty-two. Being for three counties, it was esteemed a general law to that extent, and was *eo nomine*, enacted as a section in Article 53, of the Code of General Laws. If it had been intended as a local law merely, and that the repeal was not to be effected as to the residue of the State, it would have been differently framed and made in terms a local law, as would have been very easy. The Legislature

had evidently found that as a universal law of the State it was not deemed wise or acceptable. That the purpose of the Legislature was as we decide it to be, and that it was so understood in the State to have done, we note the fact that by the Act of 1876, ch. 384, the public character of the law and general effect of it was recognized by the Legislature in repealing this section 22 again, and re-enacting it, admitting Calvert County to the sphere of its operation. Then, again, in 1884, chapter 67, the same section of Art. 53, of the Code of Public General Laws, namely, section twenty-two as enacted by the Act of 1876, was again repealed and again amended and re-enacted *as section* 22 *of Art.* 53, and a *proviso* was added to the section itself, making it solely applicable to the counties of St. Mary's, Prince George's, Charles, Calvert, Anne Arundel and Dorchester, instead of making that provision by separate section, as in the Act of 1870. This Act not only amended the statute in certain particulars, but added Anne Arundel and Dorchester counties to the area of its operation. *This* was the law when the trover alleged in this cause was committed, if committed as charged; for the Act was made to take effect immediately on its passage, and was approved on the 20th of March, 1884, and then became effective. As further indicating the legislative understanding of the limited effect of the law after the Act of 1870 was passed, and how the counties regarded it, we note the Act of 1886, ch. 182, when it was desired to bring Worcester County within the scope of its operation, did the thing in the same way as the preceding Acts, by repealing section 22 and re-enacting the same, and adding Worcester County to its area of effect. We cannot see how legislative purpose could have been more plainly indicated, nor how it is possible for us to hold that section twenty-two, as enacted in 1868, continued operative in 1884, in Harford County, notwithstanding the inter-

vening legislation of 1870 and 1876 and 1884, which expressly repeal that section and re-enact *it* as section twenty-two; and do not leave section twenty-two intact and make a new section introducing the new provisions. To adopt appellant's view we should be forced into declaring, that though the Acts of 1870 and 1884, do in express terms repeal section twenty-two and make a new section twenty-two, still it was not the purpose of the Legislature to do that, and their bungling must be corrected by sifting from the new section twenty-two certain portions for general application in the State, and give the section as a whole only local operation. This would not only be a novel mode of interpretation, but plainly unnatural, anomalous, and wholly impracticable.

Having reached the conclusion that section twenty-two of the Code, as added by the Act of 1868, was not operative in Harford County after the Act of 1870, the solution of the other questions arising on this appeal, becomes very simple and easy.

The action is trover. The plaintiff declares for three hundred bushels of wheat which she had stored at the warehouse of Joseph Ross, on the canal at Conowingo, in Harford County, which the *narr.* alleged the defendant to have taken and converted to his own use. The husband of the appellee, Mrs. Haines, was the tenant of the appellant's farm in Harford County, and had been for several years, upon a crop-rent. According to appellant's own testimony, for the year 1884, the tenant was, by the contract, to have one-half of the products for his share. The tenant, being indebted to one James S. Chenoworth, made a mortgage to him of sundry articles of personal property, including his interest in a share of the wheat crop growing on the farm rented of appellant for the year 1884, to secure an indebtedness recited in the mortgage as thirteen hundred and nineteen dollars and forty cents. Upon the 29th of January, 1884, decree

was obtained for a sale of the mortgaged property, to pay the mortgage debt. Trustees were appointed who sold the property on the 29th of April, 1884, to various purchasers. The tenant's (the mortgagor's) one-half interest in the wheat crop was sold to the appellee, Mrs. Haines. The sale was reported to the Court under oath of the trustees, and recited that the purchaser had complied with the terms of sale. The sale, however, had not been ratified by the Court when the act sued for was committed; a fact relied on by appellant, but which, the sequel will show, we do not think can defeat the action. The wheat was harvested, and the tenant proceeded to divide the same, as had been his habit previously, according to appellant's own statement, without his supervision or participation. Having harvested and threshed the wheat, the tenant, acting as the agent of his wife, delivered in September, 1884, at Ross' warehouse, at Conowingo, six hundred and thirty-four bushels, in two piles of three hundred and seventeen bushels each, in a separate parcel or pile—one for the appellant, and the other for the appellee. He left the wheat in the care of Mr. Ross; one pile for appellant, and the other for appellee, by her direction. Appellant's wheat was also put with Ross by appellant's direction. Appellant took his own wheat away by boat to Baltimore, and against the remonstrance of Ross, who told appellant's agent it was Mrs. Haines' wheat—he took her wheat also ; and it is for the value of that wheat of appellee, so taken by appellant, that she sued for conversion.

There were three bills of exception taken at the trial. The first was to the refusal of the Court when the plaintiff rested his case, to say that there was no legally sufficient evidence to justify recovery. The second was to the admission of certain testimony offered by the plaintiff in rebuttal, and the third embraced the prayers. As our decision upon the prayers will cover the whole case, we

will not examine the exceptions *seriatim.* All the prayers of the appellee were granted, all those of the appellant were refused. The defendant's (appellant's) prayer at the conclusion of the plaintiff's evidence, and his two prayers at the conclusion of the case, all, to some extent, involved the idea. that the appellant had a lien on the whole crop for his rent, and, therefore, was not answerable in trover to the appellee for taking what was intended, when left with Mr. Ross, for her share as purchaser of her husband's interest. That aspect of the case has already been fully considered, and we have already said that the Act of 1868 had been repealed, and its provisions were not in force in Harford County, and,, therefore, that contention of the appellant, in defence of his taking the wheat, was not tenable. He, also, contended, and by his second prayer directly put the proposition, that if he got but one-half the crop, in fact, he was not liable to the suit brought. In support of that view, he had offered some testimony as to how much wheat was raised, and tending to show that the pile left for him at Ross' was not his full share, and that the wheat had not all been sent to Conowingo, to the care of Ross. · For the purposes of this suit that contention was immaterial, and not cognizable in this suit under the pleadings. The tenant tendered rent. He divided the crop as he had been allowed to do theretofore, and delivered a portion to the purchaser of his interest, and a like portion to the appellant. If any remained undelivered, he was entitled to his share of it, but he was not entitled to take the purchaser's half of that which was divided and appropriate to himself, so that the Court was clearly right in overruling that contention. The plaintiff offered four prayers, all of which were resisted by the appellant.

The first two related to evidence, which, by them, the jury was told they could not consider as affecting their

Hopper *vs.* Haines.

verdict. The first related to the quantity of wheat raised on the farm that year, which was clearly immaterial in a suit for taking wheat actually delivered to the plaintiff on account of her purchase of the tenant's share.

The second prayer directed the jury that they could not regard the statement of the appellant that the tenant had agreed to let him have all the wheat that year for arrearages of years before. It was not pretended that there was any written agreement to that effect, and the tenant's share was regularly mortgaged, and the plaintiff's title derived by purchase under decree for closing that mortgage. It was perfectly clear, therefore, that the claim of the appellant, which was, in fact, denied by the tenant, could not interpose any barrier to recovery in this suit.

The third prayer of the plaintiff, in effect, instructed the jury that if they found the tenancy to exist, and that tenant's share was one-half of the crop, and that tenant's interest or share had been sold to the plaintiff, and that after a division by the tenant a portion was delivered at Ross' for plaintiff, and that defendant took it, then they should find for plaintiff, although they might find the tenant owed defendant, and the wheat was not fairly divided. This prayer was objected to on various grounds, some of which have already been disposed of. But the right of the plaintiff to sue and recover in this case was especially rested on the contention that she had not paid for the wheat she bought, and the trustees' report had not been ratified. So far as the defendant was concerned, these facts, though true, were immaterial. The plaintiff was in possession, and was purchaser, and if the trustees had waited for the purchase money it was no matter to the appellant. He could not, as against the plaintiff, who had the possession and the right to the possession, set up title to the wheat he had taken in another person. *Harker, et al. vs. Dement,* 9 *Gill,* 7; *Mayor, &c.,*

*of Baltimore vs. Norman,* 4 *Md.*, 359; *Thomas vs. Stern-heimer,* 29 *Md.*, 268. The appellant testified to the taking and selling the wheat, and he was clearly answerable in trover. *Dietus vs. Fuss,* 8 *Md.*, 148.

The fourth prayer of the plaintiff fixed the measure of damages to be the value of the wheat when taken, with such interest as the jury might think proper to allow under the circumstances. There can, certainly, no fault be found with this instruction by the appellant. It is the settled law in this State, that the measure of damages is the value of the property taken, with interest from the taking to the time of verdict, where there has been a total deprivation of property, as was the case here. *Thomas vs. Sternheimer,* 29 *Md.*, 268; *Corner vs. Mackintosh,* 48 *Md.*, 389. We find no error, and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 11th June, 1889.)

A petition was filed on the 5th of October, 1889, in behalf of the appellant, by his counsel, William M. Marine, A. F. Musselman and George Yellott, asking for a rehearing of the foregoing case. The prayer of the petition was denied, and in support of the denial the following opinion of the Court was delivered:

IRVING, J. In overruling this motion for re-argument we take occasion to say, that in making the decision in this case, we did not overlook section 137 of Art. 16 of the Code of 1860, as counsel suggest in their brief for a rehearing. Although there had been no formal ratification of the trustees' report of sale, we regarded Mrs. Haines as being rightfully in possession of the wheat, and having such qualified property therein as would sustain the action of trover against the appellant, who had not

the shadow of a right to the wheat. It seemed to us so clear that her position fully met the requirements of the law, and especially the decision of this Court in *Dungan, Adm'x vs. Mutual Ben. Life Ins. Co. of N. J.*, 38 *Md.*, 249, that we did not deem it necessary to advert to that aspect of the case as presented by counsel. She had been sold the wheat in its growing condition, and had reaped it and caused it to be threshed; and was about to market it when the same was taken and converted by the appellant. The sale was made to her in April, and it was taken and converted by the appellant in August following. Section 137 of Article 16, does require a ratification of the sale before the title is absolutely perfected; but the sale is not *void*, as argued by counsel. At most it is only voidable, if successful objection be made, for fatal irregularly, fraud or misrepresentation. No exceptions had been filed. There was no fraud. Nobody interested had assailed it for any reason. Having been put in possession by the trustees, they had no longer a *right* of possession, and could not resume possession without an order of Court on good cause shown. In auction sales of goods by trustees on assignment, or by order of Court, goods are always delivered immediately on compliance with the terms of sale. In such cases, and in sales of perishable personalty, the sale has always been regarded as sufficiently complete to justify an immediate disposition of the property by the purchaser at the trustees' sale so as to pass title. Any other rule would be ruinous to creditors and others, if fish, oysters, small fruits and other perishable articles could not be sold by delivery. As between the Court, the trustee and the purchaser at the trustee's sale, the sale is liable to be reviewed, and for collusion between trustee and purchaser, misrepresentation of trustee or other good ground, a person interested might secure the sale to be set aside; so that wrong might not be done.

In this case the trustees had reported the sale, and stated under oath, that the several purchasers had all complied with the terms. If that was not in fact true, the trustees had accepted Mrs. Haines as abundantly answerable and good without security. They had made themselves answerable; and they so understand and are, as her counsel, prosecuting this suit. So far as the appellant is concerned, it is immaterial whether Mrs. Haines had fully complied with the terms of sale or not. He has no right to except to it here. Mrs. Haines had been in rightful and unquestioned possession so long, and having expended her money in reaping and threshing the wheat, she must be held to have such special or qualified property, as supports the action she brought for the appropriation and conversion of the wheat to his use by the appellant. The trustees certainly could not have brought trover. They had not possession, or the right to it necessary to the action. Had they brought the suit, the case of *Gordon vs. Harper*, 7 *Durn. & East*, (*Term R.*,) 9, would have been authority against them, but it does not apply to Mrs. Haines as appellant's counsel seem to think. In that case the landlord had leased the personalty and had no possession or right to it. The case of *Pocock vs. Hendricks*, 8 *G. & J.*, 421, so strongly relied on by motor's solicitors, does not conflict with the view we have taken in this case. All that the Court decided in that case was, that if the plaintiff's possession had been fraudulently acquired, he had no right to maintain the action of trover, because his possession which was disturbed was not a rightful possession. Fraud had tainted it and vitiated it. The finder of a jewel in *Armory vs. Delamirie*, 1 *Strange*, 505, was held to have the right of trover against any one but the true owner, and recovered full value. In *Bigelow's Leading Cases on the Law of Torts, page* 425, it is said that "when it is said that the plaintiff must have

an absolute or *special* property in the goods, the latter term is used to denote the possession either of one who has a qualified interest, or of one who has only the bare possession, since this of itself gives him the right to the property as to all persons except the owner." The possession here spoken of, is of course, a rightful possession, and such a possession as gives a special property. Bigelow further adds that the statement of the law as there laid down is so, because of the case of *Armory vs. Delamirie,* which is the principal case. We can find nothing in the authorities cited and relied on by motor's counsel, which is subversive of the view we entertained in deciding the case and which we here express.

> *The motion for rehearing*
> *must be denied.*

(Filed 19th December, 1889.)