## SEABOARD AIR LINE RAILWAY *vs.* SAMUEL PHILLIPS.

*Carriers—Bill of Lading to Order of Consignor—Delivery of Goods to Wrong Person or Without Bill of Lading is a Conversion—Mitigation of Damages in Trover by Return of Goods—Reasonable Time of Return—Instructions to Jury—Evidence.*

A delivery of goods by a carrier or warehouseman to a person not entitled to receive them constitutes a conversion for which trover lies.

After a conversion has taken place, neither an offer to return nor an actual return of the converted goods will afford a defense to an action of trover, but if the goods have been returned to, and received by, the plaintiff, that fact may be shown in mitigation of damages.

The measure of damages in an action of trover is, as a general rule, the value of the converted chattels at the time of their conversion with interest thereon to the date of the verdict.

When the defendant alleges in mitigation of damages that the converted goods were subsequently returned to the plaintiff, the burden of proof is upon him to show both the identity and the unimpaired condition of the articles tendered in return.

When a seller ships goods to the purchaser under a bill of lading to his own order, with a draft for the price attached thereto, the delivery of the goods to the carrier does not pass title to the purchaser, and the latter is not authorized to take possession unless the draft is paid.

In such case, a delivery of the goods by the carrier without the production of the bill of lading endorsed is a conversion.

An unqualified statement of the general rule as to the measure of damages in a particular action does not always form a proper instruction to the jury. When there is evidence tending to show the existence of

facts calling for a mitigation of damages, the instructions to the jury should call their attention to that evidence, and direct them to give it due consideration if they believe it to be true.

Plaintiff in Baltimore shipped merchandise to Atlanta, Ga., receiving therefor from the carrier a non-negotiable bill of lading to his own order, which stated that its surrender properly endorsed would be required before delivery of the goods. The bill of lading directed that the purchaser, one P., be notified. Plaintiff sent to a bank in Atlanta, a draft on the said P. with the bill of lading attached. The draft was not paid, and it was returned with the bill of lading to the plaintiff, who thereupon directed the carrier to return the goods to him. The goods, however, were delivered to P., but were afterwards received back from him by the carrier. Plaintiff had knowledge subsequently that such delivery had been made and continued to demand the return of the goods. Nearly three months afterwards, boxes represented by the carrier to contain the goods in question, arrived in Baltimore, but the plaintiff refused to accept the same, and brought this action of trover against the carrier. *Held*, that a prayer of the plaintiff, instructing the jury that he was entitled to recover the value of the goods is erroneous because it ignored defendant's evidence that the goods were brought back and tendered to the plaintiff in the same condition as originally received and were still held subject to the plaintiff's order. This evidence, if found to be true by the jury, should be considered in mitigation of damages.

*Held*, further, that a prayer of the defendant denying the legal sufficiency of the evidence to entitle the plaintiff to recover at all was properly rejected since the delivery of the goods to P. by the defendant without the surrender of the bill of lading was a conversion.

*Held*, further, that a prayer is erroneous which directed a verdict for the defendant if the jury fonnd that the plaintiff, with knowledge of the delivery of the goods to P, directed the defendant to reship them to him, and that the goods arrived in Baltimore in due course, and the plaintiff received due notice thereof and should have accepted them, ss there was no evidence that the goods returned were not the same that had been shipped by the plaintiff.

*Held*, further, that prayers offered by the defendant are defective which assume that the goods were returned to Baltimore within a reasonable time after their original shipment, instead of submitting that question to the jury, and which assumed that a return of the goods would destroy plaintiff's right to recover instead of merely furnishing ground for mitigation of damages.

When goods are in the possession of a carrier as warehouseman, at the end of the transit a delivery thereof to the wrong person is a conversion for which trover lies.

In an action for the conversion of goods shipped under a bill of lading

issued jointly by two connecting carriers, the correspondence between them relating to the handling of the goods is admissible in evidence.

Parol evidence of the contents of a letter is not admissible unless there be proof that the original cannot be produced.

*Decided June 24th, 1908.*

Appeal from the Superior Court of Baltimore City (Niles, J.)

*Plaintiff's 1st Prayer.*—The jury are instructed that if the jury find for the plaintiff, then in assessing damages, they may allow the plaintiff the value of the goods shipped to Atlanta (as described in the testimony), on the twenty-seventh of October, 1905; with interest in the discretion of the jury, from that date to the date of their verdict. (*Granted.*)

*Defendant's 1st Prayer.*—That the plaintiff has offered no evidence legally sufficient under the pleadings in this case to entitle him to recover and their verdict must be for the defendant. (*Refused.*)

*Defendant's 2nd Prayer.*—If the jury shall find that the plaintiff with knowledge of the fact that the defendant had made a delivery of the goods mentioned in the declaration to L. Pfeiffer at Atlanta, Georgia, ordered and directed the defendant to ship the said goods to him at Baltimore, Maryland, and shall further find that the defendant did in fact act upon such instructions and ship or cause to be shipped to the plaintiff at Baltimore, Maryland, the said goods and shall further find that the said goods did in fact reach Baltimore in due course and that the plaintiff received due notice thereof, that then and thereupon it became the duty of the plaintiff to accept said goods so shipped to him, and under the pleadings in this case, their verdict must be for the defendant, as there is no evidence to show that the goods so shipped were not the identical goods ordered to be shipped by the plaintiff. (*Refused.*)

*Defendant's 3rd Prayer.*—If the jury shall find that the defendant on or about the 27th day of October, 1905, at the city of Atlanta, Georgia, delivered to L. Pfeiffer & Company,

to whom the same had been sold, the goods mentioned in the declaration, and that thereafter at the request of the defendant and before any of said goods had been used or otherwise injured, the said goods were all repacked in the original cases and returned to the defendant, and shall further find that the plaintiff had knowledge that the goods had been so delivered by the defendant, and that thereafter the plaintiff through his attorney directed and ordered the defendant to return said goods to the plaintiff at the city of Baltimore, and shall further find that acting and relying upon the orders so given the defendant did in fact cause the said goods to be returned to the city of Baltimore and shall further find that the plaintiff received due notice of the arrival of said goods at the city of Baltimore and in response to such notice visited the wharf of the Baltimore Steam Packet Company, but did not inspect or examine said goods other than the outside of the cases in which they were packed, and thereupon refused to accept or receive the same.

And if they shall further find from the evidence in this case that an opportunity was given to the plaintiff to inspect said cases in order to ascertain whether they were, in fact, his goods or not, and he failed and refused so to do that then under the pleadings in this case their verdict must be for the defendant. (*Refused.*)

*Defendant's 4th Prayer.*—The defendant prays the Court to instruct the jury that if they shall find that the defendant on or about the 27th day of October, 1905, at the city of Atlanta, Georgia, delivered to L. Pfeiffer & Company, to whom the same had been sold, the goods mentioned in the declaration, and that immediately thereafter at the request of the defendant and before any of said goods had been used or otherwise injured, the said goods were all repacked in the original cases and returned to the defendant, and shall further find that the plaintiff had knowledge that the goods had been so delivered by the defendant, and that thereafter with said knowledge, the plaintiff through his attorney directed and ordered the defendant to return said goods to the plaintiff, at the city of Bal-

timore, and shall further find that acting and relying upon the
order so given the defendant did in fact cause the said goods
to be returned to the city of Baltimore, and shall further find
that the plaintiff received due notice of the arrival of said
goods at the city of Baltimore, and in response thereto visited
the wharf of the Baltimore Steam Packet Company and saw
the cases in which said goods were packed, that it then and
thereupon became the duty of said plaintiff to inspect said
goods and if he found them to be all the goods sued for in this
cause to accept the same, and if they shall further find from
the evidence in this case that an opportunity was given to the
plaintiff to inspect said cases in order to ascertain whether
they were in fact, his goods or not, and he failed and refused
so to do that then under the pleadings in this case, their ver-
dict must be for the defendant.     (*Refused.*)

*Defendant's 5th Prayer.*—If the jury shall find that the de-
fendant on or about the 27th day of October, 1905, at the
city of Atlanta, Georgia, delivered to L. Pfeiffer & Company,
the goods mentioned in the declaration and that thereafter at
the request of the defendant and before any of said goods had
been used or otherwise injured, the said goods were all re-
packed in the original cases and returned to the defendant,
and shall further find that the plaintiff had knowledge that the
goods had been so delivered by the defendant, and that there-
after with said knowledge, the plaintiff through his attorney
directed and ordered the defendant to return said goods to
the plaintiff at the city of Baltimore, and shall further find
that acting and relying upon the order so given, the defend-
ant did in fact cause the goods to be returned to the city of
Baltimore and shall further find that the plaintiff received due
notice of the arrival of said goods at the city of Baltimore and
visited the wharf of the Baltimore Steam Packet Company
and saw the cases in which the said goods were packed, that
then and thereupon it became the duty of the plaintiff to as-
certain by inspection whether the said goods so returned were
in fact the goods that he had through his attorney ordered
and directed to be returned to him, and if so, to accept the

same, and if they shall further find from the evidence in this case that an opportunity was given to the plaintiff to inspect said cases in order to ascertain whether they were in fact, his goods or not, and he failed and refused so to do, that then under the pleadings in this case, their verdict must be for the defendant.

*Defendant's 6th Prayer.*—The defendant prays the Court to instruct the jury as matter of law under the terms of the bill of lading at the time the delivery to L. Pfeiffer & Son was made, that the defendant had ceased to hold the two cases in question as carrier, but held them as an ordinary warehouseman.    (*Refused.*)

*Defendant's 7th Prayer.*—The defendant prays the Court to instruct the jury that all matters of opinion expressed in the correspondence introduced in evidence are to be excluded and disregarded by them as such matters of opinion do not constitute evidence of or proof of the issue between the parties.

And the Court modified the defendant's fifth and seventh prayers and as modified granted them as follows:

*Defendant's 5th Prayer as modified.*—The defendant prays the Court to instruct the jury that if they shall find that the defendant on or about the 27th day of October, 1905, at the city of Atlanta, Georgia, delivered to L. Pfeiffer & Company, the goods mentioned in the declaration, and that thereafter at the request of the defendant and before any of said goods had been used or otherwise injured, the said goods were all repacked in the original cases and returned to the defendant, and shall further find that the plaintiff had knowledge that the goods had been so delivered by the defendant, and that thereafter with said knowledge, the plaintiff through his attorney directed and ordered the defendant to return said goods to the plaintiff at the city of Baltimore, and shall further find that acting and relying upon the order so given the defendant did in fact cause the said goods to be returned to the city of Baltimore and shall further find that the plaintiff received due notice of the arrival of said goods at the city of Baltimore and visited the wharf of the Baltimore Steam Packet Company and saw the

cases in which the said goods were packed, that then and thereupon it became the duty of the plaintiff to ascertain by inspection whether the said goods so returned were in fact the goods that he had through his attorney ordered and directed to be returned to him, and if so, to accept the same, and if they shall further find from the evidence in this case that an opportunity was given to the plaintiff to inspect said cases in order to ascertain whether they were in fact, his goods or not, and he failed and refused so to do, and if they shall further find that at the time the said packages were shown said plaintiff on the wharf at Baltimore and continuously from that time to the time of bringing this suit, said goods were held by the defendant subject to the order of the plaintiff, then under the pleadings in this case, their verdict must be for the defendant. (*Granted as modified.*)

*Defendant's 7th Prayer as modified.*—That all matters of opinion as to the liability of the defendant expressed in the correspondence introduced in evidence are to be excluded and disregarded by them as such matters of opinion do not constitute evidence of or proof of the issue between the parties. (*Granted as modified.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*C. Baker Clotworthy* (with whom was *J. Southgate Lemmon* on the brief), for the appellant.

*Arthur L. Jackson* (with whom was *Wm. C. Smith* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

On September 27th, 1905, the appellee, Samuel Phillips, shipped from Baltimore to Atlanta, Georgia, two cases of clothing via the Merchants and Miners Transportation Company and the Seaboard Air Line Railway. He took for the goods at the time of their shipment an "order notify" bill of

lading to his own order containing directions to notify L. Pfeiffer & Sons, Atlanta, Ga.    The bill on its face stated that it was non-negotiable and it provided that its surrender properly endorsed should be required before the delivery of the goods at their destination.    It further provided that the goods, if not removed by the party entitled thereto within twenty-four hours after arrival at their destination, would be at the owner's risk and might be retained by the railway company in its cars or depot or stored for account of the owner.

On February 13th, 1906, Phillips brought the present action of trover against the Seaboard Air Line Railway for an alleged conversion of the clothing which he had so shipped to Atlanta.    The declaration contains but one count, to which the railway company as defendant pleaded the general issue. The verdict and judgment having been against the company it took the present appeal.

During the trial of the case below the defendant took three exceptions to rulings on evidence and one to the disposition made of the prayers.

There is evidence in the record tending to prove the following state of facts.    In September, 1905, before the shipment of the goods to Atlanta, Samuel Phillips sold them in Baltimore to L. Pfeiffer & Sons, of Atlanta, for $557.62, of which $25 were paid in cash and $232.62 were to be paid on the delivery of the goods and the balance in 30 and 60 days. Phillips then shipped the goods, in the manner already stated, and drew a sight draft on Pfeiffer & Sons for $232.62 and sent it with the bill of lading attached to Atlanta for collection.    The draft, going by mail, reached Atlanta on September 30th, while the goods, going by freight, did not arrive there until October 6th.    On the arrival at Atlanta of the draft, with the bill of lading attached, the bank to which it had been sent notified Pfeiffer & Sons by postal card to take it up, but they, being short of money at that time, waited until after the arrival of the goods before going to the bank to take up the draft.    Some days after they had received notice from the railway company of the arrival of the goods

Pfeiffer and Sons went to the bank to take up the draft, but it, not having been honored, had been recalled, with the bill of lading attached, by Phillips to Baltimore.

In that state of affairs the railway company delivered the clothing to Pfeiffer & Sons on October 27th, without the production of the bill of lading, upon their depositing with it a certified check for $232.62 and promising either to return the goods if demanded or to stand good for any difficulty that might arise from the delivery.  Pfeiffer & Sons having gotten possession of the goods took them to their store and unpacked them, but on the following day, before, as they say, they had sold any of them or mixed them with their other stock, the railway company sent for the goods and took them again into its possession.

Phillips, in the meantime, having gotten back into his possession on October 20th, the draft with the bill of lading attached, had gone at once to the office of the Merchants and Miners Transportation Company in Baltimore and requested the immediate return to him of the goods.  Upon being informed by Mr. Dillingham, the agent of the company, that he could have the goods in three or four days by paying the cost of a telegraphic order for their return, Phillips paid the cost and the order was sent by the agent.  On October 28th Dillingham informed Phillips that the goods had arrived in Baltimore by the Bay Line steamers and gave him an order on that line for them, but it turned out that the goods were not there.  They did not actually arrive in Baltimore until January 27th, 1906.

There is also evidence in the record tending to show that a way bill for the return of the goods from Atlanta to Baltimore via the Seaboard Air Line and the Bay Line steamers, issued by the defendant at Atlanta on October 24th, 1905, showing the defendant's agent, Mook, as shipper and designating the number of the car containing the goods, was delivered by the defendant to the Bay Line steamer, Alabama, at Portsmouth, Va., on October 30th.  This way bill was brought by the Alabama to Baltimore on the morning of October 31st, when

it was exhibited to Phillips by the agent of the Bay Line, but the goods were not in the car designated in the way bill nor were they delivered by the defendant company to the Bay Line until January 24th, 1906, when they were transported by that line to Baltimore. While the goods were thus detained at Atlanta in the possession of the defendant, Phillips made frequent inquiries after them of it and of the agents of the Merchants and Miners Company, by which he had shipped them, and of the Bay Line steamers by which he had been told that they would be returned. Having been finally informed, in reply to his inquiries that the goods had not been delivered by the defendant at Atlanta but were still in its hands intact with nothing missing, he had, in the latter part of December, 1905, and early in January, 1906, demanded their return to him. There is evidence, on the contrary, tending to show that, before Phillips made the later one of his demands for the return of the goods, he knew all about their delivery and recall at Atlanta by the railway company and had been in correspondence with Pfeiffer & Sons in reference to making some arrangement for redelivering the goods to them.

On January 29th, 1906, after the goods had been returned to Baltimore via. the Bay Line, Phillips and his counsel went to the Bay Line wharf where they were shown two cases bearing the name of Pfeiffer & Sons and were informed that they contained the returned clothing but Phillips declared that they were not his boxes at all and refused to accept them. Phillips and his counsel having expressed a desire to see the contents of the boxes, Mr. Surratt, the agent of the line, said to them that he was afraid that if they opened the boxes they would have to accept the goods whereupon they declined to be put in that position and went away. Surratt's account of that interview tends to prove that no desire was expressed by Phillips or his counsel to have the boxes opened and that no suggestion was made to them by him as to the probable consequence to them of opening the boxes.

There was also evidence tending to show that when the

goods were received back in Baltimore on January 27th, 1906, and the plaintiff notified of their return, the season for their sale had gone by and their market value had for that reason greatly depreciated.

At the close of the case the plaintiff offered one prayer and the defendants offered seven. The Court granted the plaintiff's prayer and rejected all of the defendant's prayers except the fifth and seventh which it granted with certain modifications. It will simplify the discussion of those prayers and the disposition of them made by the Court below to briefly advert to the legal principles applicable to an action of trover against a carrier for the misdelivery of goods.

The authorities agree that a delivery of goods by a carrier or warehouseman to the wrong person will constitute a conversion for which an action of trover will lie. *Poe on Pleading*, secs. 216–17, 522; *Hutchinson on Carriers*, vol. 2, sec. 669; *Forbes* v. *Boston & Maine R. R. Co.*, 133 Mass. 154; *Security Trust Co.* v. *Express Co.*, 178 N. Y. 620; *P. Ry. Co.* v. *Larned*, 103 Ills. 293; *Louisville & Nashville R. R. Co.* v. *Barkhouse*, 100 Ala. 543; *Bruhl* v. *Coleman*, 113 Ga. 1102.

After a conversion has taken place neither an offer to return nor an actual return of the converted goods, will afford a good defense to an action of trover for their conversion, but if the goods have been returned to and received by the plaintiff that fact may be shown in mitigation of damages. *Cooley on Torts*, 3 ed., sec. 535; 2 *Addison on Torts*, 513, sec. 534; 28 *A. & E. Encycl.* 684; *Greenfield Bk.* v. *Leavitt*, 23 Mass. 1; *Stilwell* v. *Farwell*, 64 Vt. 286; *Cernahan* v. *Chrisler*, 107 Wis. 645; *Sparks* v. *Prudy*, 11 Mo. 219. Our attention has not been called to any direct decision by this Court upon that proposition, but in the cases of *Hepburn* v. *Sewell*, 5 H. & J. 211, and *Buel* v. *Pumphrey*, 2 Md. 270, our predecessors recognized as valid the doctrine that where goods wrongfully converted are afterwards returned trover will still lie for the conversion. In the latter case the Court said that if the goods were returned speedily and in as good plight as when taken, the damages would be merely nominal.

The measure of damages applicable, as a general rule, to a recovery in actions of trover has repeatedly been held by this Court to be the value of the converted chattels at the time of their conversion with interest thereon to the date of the verdict. *Stirling* v. *Garitee*, 18 Md. 468; *Thomas* v. *Sternheimer*, 29 Md. 268; *Hopper* v. *Haines*, 71 Md. 76; *Bonaparte* v. *Clagett*, 78 Md. 105.

Turning now, in the light of the legal principles to which we have adverted, to the consideration of the prayers before us which will be set out in full by the Reporter, we find that the plaintiff's prayer, which relates solely to the measure of damages in the event of a verdict in his favor, is well within the general rule on that subject. It is defective, however, in ignoring the evidence in the record tending to show that the defendant in response to the plaintiff's demand for a return of the goods had them retransported to Baltimore and tendered them to him, in substantially the same condition in which it had received them from him and that it still held them subject to his order. If the jury believed that evidence, and regarded the time at which the tender of the goods was made as a reasonable one, it should have been considered by them in mitigation of damages in fixing the amount of their verdict. An unqualified statement of the general rule as to the measure of damages does not always form a proper instruction to a jury. Where there has been a total deprivation of the property converted, the general rule would form a proper instruction to the jury, but where there is evidence tending to show the existence of circumstances calling for a mitigation of damages the instruction to the jury should call their attention to that evidence and direct them to give it due consideration if they believe it to be true, so that the measure of damages may be determined in accordance with what are found to be the facts of the particular case.

The defendant's first prayer, which asked the Court to take the case from the jury for want of legally sufficient evidence to entitle the plaintiff to recover under the pleadings was properly rejected. The goods were shipped by the plaintiff to

himself as consignee upon the express terms appearing upon
the face of the bill of lading that they were not to be delivered
without its surrender properly endorsed.    They were deliber-
ately delivered without its surrender to a person other than
the consignee.    Under those circumstances, it could not be
said, whatever elements of mitigation the case presented, that
that there was no evidence legally sufficient to enable the
plaintiff to recover in trover.

The defendant's second prayer is predicated upon the as-
sumption that, if the jury find that the plaintiff, with
knowledge of the delivery of the goods by the defendant to
Pfeiffer & Sons at Atlanta, directed the defendant to reship
them to him at Baltimore and it sent them to Baltimore in re-
sponse to plaintiff's direction and they arrived there in due
course and the plaintiff received due notice thereof he should
have accepted them and as there was no evidence that the
goods returned were not the same that had been shipped by
him, the verdict must be for the defendant.    That prayer was
properly rejected.    The uncontradicted evidence showed that
the plaintiff on October 20th, 1905, as soon as he had received
notice of the dishonor of the draft, had a telegraphic order
sent to the defendant to send the goods back to him at Balti-
more, and there is evidence in the case tending to show
that the defendant issued a way bill or manifest at Atlanta on
October 25th for the shipment of the goods to Baltimore via
the Bay Line.    The goods did not arrive at Baltimore until
January 27th, 1906, nearly three months after the date of the
way bill, although Dillingham, the agent of the Merchants and
Miners Company, who sent the telegraphic order informed
the plaintiff that the goods would arrive in Baltimore in
three or four days.    If the prayer was intended to refer to
the order of October 20th, 1905, for the return of the goods
it was not proper to leave it to the jury to find that the goods
reached Baltimore in due course.    Nor could that order for
the return of the goods have been given by the plaintiff with
knowledge of the delivery of the goods to Pfeiffer & Sons, for
the delivery was not made until a week after the sending of

the order.  If on the other hand the prayer refers to the demands made in December and January for the return of the goods the prayer is defective in ignoring the evidence tending to prove that those demands were made after the plaintiff had been assured by the agents of the defendant that the goods had never been delivered to Pfeiffer & Sons but were safe and intact in the hands of the defendant at Atlanta.  Nor do we think that it was incumbent upon the plaintiff, as the prayer assumes, to prove that the goods tendered him in January, 1906, were not those which he had shipped.  A wrongful delivery amounting in law to a conversion, of the goods by the defendant having been shown, it was incumbent upon it, if it desired to show a return of the goods in mitigation of damages to prove to the satisfaction of the jury both the identity and the unimpaired condition of the articles tendered in return.

The defendant's third prayer was properly rejected for the reasons already stated and for the further reason that it assumed that Pfeiffer & Sons were the owners of the goods and entitled to their possession on October 27th, when the delivery was made.  In view of the facts, that the contract of sale of the goods was made upon the condition that they were not to be delivered to Pfeiffer & Sons until the payment of the installment of $232 of the purchase money and that they were shipped upon condition that they were not to be delivered except upon surrender of the bill of lading properly endorsed, by the shipper it was erroneous to assume that Pfeiffer & Sons were entitled to the delivery of the goods, as purchasers of them, in the manner and at the time when it was made.  Nor did the shipment of them to Atlanta by the vendor consigned to himself constitute such a delivery of them to the carrier as to pass title to the purchaser.  *Hopkins* v. *Cowen & Murray, Receivers,* 90 Md. 152.

The defendant's fourth and fifth prayers are defective and were properly rejected, first because they assume that the goods were returned to Baltimore within a reasonable time after their original shipment to Atlanta instead of submitting that question to the jury; and secondly, because they are

predicated upon the hypothesis that a return of the goods would destroy the right of the recovery instead of furnishing ground for mitigation of damages.    The modification made by the Court of the fifth prayer did not relieve it from the defects to which we have referred.

The defendant's sixth prayer was properly refused because, even if the goods were in the hands of the defendant in the capacity of warehouseman when delivered by it to Pfeiffer & Sons, the delivery of them by it as warehouseman to the wrong person would under the authorities cited by us have constituted a conversion of them.    There was no error in granting the defendant's seventh prayer as modified by the Court.

The rulings upon evidence forming the basis of the first three exceptions were in our opinion correctly made.    The first exception was to the admission in evidence of a series of letters and telegrams which passed between the agents of the Merchants and Miners Company and the Seaboard Air Line touching the handling and movement of the goods in question while in the possession of one or the other of those two carriers, who jointly issued the bill of lading.    This correspondence, while in a certain sense *res inter alios*, related to the transaction which formed the basis of the suit and tended to throw light upon its true character and may fairly be regarded as constituting part of the *res gestae.*    The second and third exceptions were to the refusal to permit the defendant to put in evidence either a copy, or parol testimony, of the contents of a letter alleged to have been written by Phillips to Pfeiffer & Sons tending to show a ratification by the former of the delivery of the goods by the defendant to the latter. There was no evidence tending to show the loss or destruction of the letter itself or any effort by the defendant to secure its production.    Without a proper foundation explaining the failure to produce original written instruments of evidence parol evidence of their contents is not admissible.

For the errors to which we have referred in the rulings on the prayers the judgment appealed from must be reversed.

*Judgment reversed with costs and new trial awarded.*