# ELLA J. BURRIER

*vs.*

## CUNNINGHAM PIANO COMPANY.

*Replevin—Plea of Property in Defendant—Demand Before Action—Defective Bond—Failure to Object Below- -Damages—Conditional Sale—Waiver of Provision.*

In replevin the plea of property in the defendant casts upon the plaintiff the burden of establishing his right of property.

p. 142

The assignment of a contract of conditional sale by the seller carries the right of property together with the right of possession for condition broken, and the assignee acquires the same rights that the vendor had. p. 142

That a vendor of goods by conditional sale on the instalment plan accepts payments less than the amounts specified in the contract does not involve a waiver of the right to enforce the contract upon a subsequent breach by the purchaser's refusal or failure to make further payments on the purchase price. p. 143

Ordinarily, when the property of plaintiff is in the rightful possession of defendant a demand is necessary before an action of replevin in *detinet* can be maintained. p. 143

But where defendant pleads ownership in himself he cannot defeat recovery under the pretence that he would have surrendered the property if demand had been made. p. 143

Rulings on the admission of evidence are not reversible error where the facts sought to be shown were otherwise proven.

p. 143

An objection to a defect apparent on the face of a replevin bond may be taken either by motion to dismiss or by answer in abatement. p. 144

The failure to take a bond or the taking of an insufficient bond must be taken advantage of at the earliest opportunity,

and by neglecting this and pleading, the opportunity is lost; objection cannot be first made after verdict or on appeal, it not going to the jurisdiction of the lower court.                    p. 144

In actions in replevin, where the declaration is in the *detinuit,* the plaintiff, if he recovers, has adjudged to him the right of possession and damages for the detention of the goods only; while if the declaration is in the *detinet,* he should have awarded to him as well the value of the goods as damages for their illegal detention.                                            p. 145

Where, in an action of replevin, the property is delivered to plaintiff under the writ, the judgment in his favor should be for the property, and damages for its detention and costs of suit, and not in the alternative for the property or its value.

p. 146

*Decided November 14th, 1919.*

Appeal from the Superior Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*David Ash,* with whom was *Harry B. Wolf* on the brief, for the appellant.

*James J. Carmody* and *Morris A. Rome,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment of the Superior Court of Baltimore City in favor of the plaintiff in an action of replevin.

The suit was begun on the 14th of November, 1917, by the filing of a replevin bond, which was approved by the clerk of the Court, and a declaration in which the plaintiff, the Cunningham Piano Company, a body corporate, alleged that

the defendant, Ella J. Burrier, "seized and took the goods and chattels of" the plaintiff, "to wit, one Forrest Piano Player, Style No. 47980," located in Baltimore City, "of the value of $250.00 current money," and "unjustly detained the same in" said city; "whereupon" the plaintiff "says it is injured, and has sustained damage to the value of five hundred dollars, lawful money, and thereupon it brings this suit."

The property was replevied and appraised, and was delivered to the plaintiff on the 21st of November. On the 6th of December the defendant filed a plea alleging that she did not take the property, and a further plea that at the time of the issuing of the writ, "the property in the goods and chattels mentioned" was in her. A replication was filed to the second plea, and the case was tried before the Court, without a jury, on issues joined on the first plea and on the replication to the second plea, and the trial resulted in a judgment in favor of the plaintiff "for the goods replevied or their value $250.00, one cent damages and costs of suit."

There are four exceptions in the record; the first three of which are to rulings of the Court on the evidence, and the fourth to the rejection of the four prayers of the defendant.

The evidence produced by the plaintiff was taken under a commission issued to Philadelphia, Pennsylvania. The plaintiff offered in evidence the following receipt, contract and assignment thereof:

> "Feb. 11, 1913.
>
> "Received of Cunningham Piano Company, in good condition, 1 Forrest Player Piano, style Moh No. 47980, same received on consignment as per terms of contract.
>
> "(Signed)   William B. Mason."
>
> "June 14, 1913.
>
> "William B. Mason, 1 Forrest Piano, Style ——, No. 47980, for the price of Five Hundred Dollars ($500.00), and 1 old upright piano in exchange, $65.00 allowed, of which the sum of $25.00 to be paid in cash, and the balance of $405.00, with interest at six per cent. (6%) to be paid in stallments of $10.00, each

installment to be due and payable on the 14th day of each month. This contract is given for the conditional purchase of the above instrument; the conditions of which purchase are that the same instrument remains the property of William B. Mason, or his assigns, until the purchase price is paid in full, and on default of payment of any monthly installment or if said piano is relet or moved from the premises I now occupy at ........, without the written consent of William B. Mason, or his agent, then in either event all of the said purchase price shall immediately become due and payable, and the said William B. Mason, or his agent, may at any time resume possession of said instrument, with or without legal process, but if the purchase price named in this contract for said instrument is fully paid according to the stipulation herein, then said instrument becomes the property of the undersigned. And I further agree to bear all losses in case of fire. I do hereby certify that I am of full age and have the legal right to make the above contract.

"(Signed) Ella J. Burrier,    (Seal)
"1837 South Charles Street.

"Witness:
"W. B. Mason.
"For value received, I assign this lease to the Cunningham Piano Company, same to be held by them until the consigned value is paid.

"(Signed)   William B. Mason."

Patrick J. Cunningham, secretary and treasurer of the Cunningham Piano Company, testified that he did not know the defendant, Ella J. Burrier, but that the plaintiff "had business relations with her"; that the plaintiff shipped a piano to William B. Mason, in Baltimore City, and received "a lease, with the signature of Mrs. Ella J. Burrier"; that the order sent by Mr. Mason to the plaintiff was received by the plaintiff on July 14th, 1913, and the piano was received by the defendant August 1st, 1913; that the defendant paid, "according to her card," $215.00 on the piano, during the

period from August 1st, 1913, to April 18th, 1917, and that the plaintiff issued a replevin for the piano because it was not paid for according to the contract or lease.   On cross-examination he further testified that the plaintiff was a corporation of the State of Pennsylvania; that the agreement or lease signed by the defendant was assigned by Mr. Mason to the plaintiff; that Mr. Mason was no longer in the employ of the plaintiff, and that he did not know where he was; that he, witness, did not see Mrs. Burrier sign the contract, and he did not make the entries on the card, but that they were correct according to the plaintiff's books; that he "personally" never made any demands upon the defendant for payments; that the plaintiff shipped pianos to Mr. Mason "under consignment," and that he sent the plaintiff the agreement for the piano in question "signed by Mrs. Burrier."

John L. Dineen testified that he had been bookkeeper for the plaintiff for thirteen years; that all he knew of the transaction between the plaintiff and Mrs. Burrier was from the original entries made in the books of the plaintiff "on account of 1 Forrest Piano Player No. 47980."   When asked to explain how the records were kept, he said that the general "mode of procedure" was for the consignee to remit to the plaintiff in monthly installments the amount required from him under the "consigned agreement," but where a particular contract is assigned to the plaintiff, the plaintiff "makes collections" of the payments due thereon.   He was then asked to state what was done in this case.   The defendant "objected to the witness answering" the question, but the Court overruled the objection, and the first exception is to the action of the Court permitting the answer to said question to be read as follows:  "A. Just as I stated it, the consignee did not keep his consigned agreement, and the Cunningham Piano Company proceeded to exercise authority vested in them by their part of the agreement, and made collections on this particular contract."   The witness was then asked if he could state from his own knowledge what payments were made by the defendant on account of the piano in suit, and he testified

to twenty-nine payments from August 1st, 1913, to April 16th, 1917, amounting to $215.00, and gave the date and amount of each payment. The second bill of exceptions then states: "Said witness having stated under said testimony in said commission that no other payments had been made on account of this piano, the defendant moved that said state-ment be stricken from said commission, but the Court refused said motion and permitted said testimony to be read in said case." The witness further testified that he did not know what was done with the piano after it was replevied, and that his knowledge of the replevin suit was obtained from the plaintiff's books; that the notations in the books were memoranda of correspondence with the defendant, and refer to "delinquency in payments"; that about thirty-five letters were written to her to which there was "occasionally a reply"; that he did not make the notations or entries, or mail the letters, but that copies were preserved; that all of the contracts do not go through his hands and that the notations and entries were made by different clerks. The third bill of exceptions then contains the following statement: "And thereupon and before said testimony in relation to said witness's knowledge of the correctness of said notations and said entries in said books and on said records were read into testimony of said trial, the defendant moved that said testimony be stricken from said commission; but the Court refused said motion and permitted said testimony to be read in said case."

The defendant testified that she bought the piano from Mr. Mason, and that "it was taken away from her recently"; that she did not know of any contract between Mr. Mason and the plaintiff, or of any assignment by him to the plaintiff. She produced in evidence receipts for payments made by her on account of the purchase price of the piano, which correspond with the payments testified to by the bookkeeper of the plaintiff, with the exception of the first payment of $10.00 which was made to William B. Mason. All of the receipts were signed by the Cunningham Piano Company except the first two, which were signed by William B. Mason, and the last

three receipts, which were signed by Bartlett, Poe and Cla-
gett, attorneys. She further testified that the first receipt,
dated June 10th, 1913, for $10.00, was signed by William B.
Mason, from whom she bought the piano; that she did not
pay "full amounts according to the contract," and that Mr.
Mason never said anything about it; that she made ten pay-
ments to the Cunningham Piano Company, in Philadelphia,
by registered letter, "and always got receipts from them";
that she "made no payments since" April, 1917; that she got
a letter directing her to make payments to Bartlett, Poe and
Claggett, attorneys, and that she made three payments to them;
that she never got "any word" from the plaintiff about her
payments not being regular, or about anything "until they
came and replevied the piano"; that she told Mr. Mason she
could not make a payment of $10.00 every month, and that
he told her she should pay as she could pay, and that she paid
in that way, sometimes $10.00 and sometimes $7.00; that
she "got some communications from Philadelphia, but could
not tell when" she "got the last one"; that the reason she "let
it go that way" was "because I had sickness and I was in the
hospital and that was the cause of my not paying it"; that she
never wrote to the plaintiff to explain why she had not made
further payments, and that she never received a letter from
the plaintiff "making any demand" on her to "pay anybody
representing" the plaintiff.

At the close of the testimony the defendant offered four
prayers, all of which were rejected. The first and second
prayers sought to withdraw the case from the jury on the
ground that there was no "legally sufficient evidence to entitle
the plaintiff to recover," the first prayer referring to the
pleadings.

The *narr.*, which was filed at the time of the institution of
the suit, and before the execution of the writ, was in *detinuit*,
alleging that the defendant took and "unjustly *detained*" the
property, instead of being in the *detinet*. 1 *Poe's P. & P.*,
sec. 576; 2 *Poe's P. & P.*, secs. 430, 439. But even if it
could be said that the *narr.* was defective on that ground, or

that there was a variance between the pleadings and the evidence, neither of these questions is presented by the defendant's prayers.  *Code,* Vol. 3, Art. 5, sec. 9A and Art. 75, sec. 91A.

The plea of property in the defendant cast upon the plaintiff the burden of establishing its right of property in the piano.  2 *Poe's P. & P.,* sec. 442; *Cullum* v. *Bevans,* 6 H. & J. 469; *Smith* v. *Wood,* 31 Md. 293; *Benesch* v. *Weil,* 69 Md. 276.  The contract executed by the defendant provided that the balance of the purchase price of the piano, amounting to $405.00, was to be paid by her in installments of $10.00, each installment to be due and payable on the 14th of each month, and expressly provided that the piano should remain the property of William B. Mason, "or his assigns," until the purchase price was paid in full.  It further provided that "on default of payment of any monthly installment * * * all of said purchase price" should become due and payable, and the said William M. Mason, or his agent, was authorized at any time to resume possession of the piano, "with or without legal process."  The contract was assigned by William B. Mason to the plaintiff, and the defendant admitted in her testimony that thereafter she made a number of payments to the plaintiffs by registered letter, and that she did not make any payments after April, 1917, because she was sick and in the hospital.  It is said in 24 *R. C. L.* 478, Sec. 772: "The assignment of the contract (contract of conditional sale) by the seller carries with it the right of property, together with the right of possession for condition broken," and in 35 *Cyc.* 695, it is said: "A vendor of personal property sold conditionally may assign his claim to the property * * *, and the assignee acquires the same rights the vendor had."  See also *Pearne* v. *Coyne,* 79 Conn. 570, 65 Atl. 973.  As the piano, under the provisions of the contract, was to remain the property of the vendor, "or his assigns," until the contract price was paid, and as the evidence shows the defendant never made any payments on account of the purchase price after April, 1917, the plaintiff was, by the terms of the contract

and assignment thereof, entitled to the possession of the property, and the defendant's first and second prayers were properly refused.

The defendant's third prayer contains the proposition that, as the plaintiff, prior to the institution of the suit, elected to continue the contract in force after a breach thereof by the defendant, it thereby waived "forfeiture on account of this particular default," and the plaintiff could not "subsequently insist upon forfeiture." The acceptance by the plaintiff of a number of payments which were less than the amount specified in the contract did not amount to a waiver of its right to enforce the contract upon a further breach by the refusal or failure of the defendant to make any further payment on account of the purchase price, and there was, therefore, no evidence to support the prayer.

The defendant's fourth prayer was based upon the failure of the plaintiff to make a demand upon the defendant for the property before the institution of the suit. Ordinarily, where the property of the plaintiff is in the rightful possession of the defendant a demand is necessary before an action of replevin in *detinet* can be brought. It is said in *Cobbey on Replevin,* Sec. 448: "The rule which requires demand is a technical one. The reason of it is that the law presumes that the party in possession of property not his own will respect the rights of the true owner when informed of them, and that upon demand being made he will surrender without suit. But where defendant pleads ownership in himself (as does the defendant in this case), he cannot defeat a recovery under the pretense that he would have surrendered the property if demand had been made." This is the rule established in this State. *Wimbrow* v. *Morris,* 118 Md. 91.

In regard to the exceptions to the evidence it is only necessary to say that even if it could be said that the objections to the evidence were made at the proper time, and that the evidence was inadmissible, there could be no reversible error in the rulings complained of, for the defendant offered in evidence the receipts for all the payments made by her and

admitted that she did not make any payment after April, 1917.

The appellant has filed in this Court a motion to quash the writ of replevin on the ground that the replevin bond is not the bond of the plaintiff; that the seal affixed thereto is not the seal of the plaintiff, and that the bond is not a bond given by another on behalf of the plaintiff.

The object of requiring a replevin bond to be filed before the writ is issued is to secure the defendant, from whom the property is to be taken, against loss in case the plaintiff fails to prosecute the suit with effect. 2 Poe's P. & P., Sec. 426; Belt v. Worthington, 3 G. & J. 252; Mason v. Sumner, 22 Md. p. 319; Seldner v. Smith, 40 Md. 614. Section 116 of Art. 75 of the Code authorizes the clerk of the court to swear all parties executing such bonds "as to their pecuniary sufficiency," and to interrogate the plaintiff under oath touching the value of the property proposed to be replevied; while Section 120 of the same Article requires the bond to be given to the State of Maryland. It is said in Cobbey on Replevin, Sec. 695: "Where a defendant goes into trial without objecting to the bond because it is not in double the value of the property, the defect is waived. An objection to a defect apparent upon the face of a replevin bond may be taken either by a motion to dismiss or by an answer in abatement. The failure to take a bond or the taking of an insufficient bond must be taken advantage of at the earliest opportunity, and by neglecting this and pleading the opportunity is lost. It is too late to object after verdict." The same rule is stated in 23 R. C. L., pp. 895-896, Sec. 53, and in 34 Cyc., pp. 1449, 1450. In this case no objection to the bond was made in the Court below, and upon principle and authority the appellant's motion cannot prevail in this Court. Code, Art. 5, Sec. 9. Counsel for the appellant cites in support of the motion Sec. 539 of 2 Poe's P. & P., where it is said that objections to the regularity and sufficiency of attachment proceedings may be made in this Court. But that statement has reference to the exercise by the lower Court of special statu-

tory jurisdictions, not embraced by its general jurisdiction. In the case of *Mears v. Adreon,* 31 Md. 229, the Court said: "Where a special limited jurisdiction, distinct from and not embraced by its general jurisdiction, is conferred by Act of Assembly on any tribunal, its power to act as it has done must appear upon the face of its proceedings. And when those proceedings are brought up for review in this Court, it must appear from their inspection that everything has been done which the law required as the basis of the authority that has been exercised. To our inquiries into such a subject, the Act of 1825 (Code, Art. 5, Sec. 9) interposes no obstruction; it has no application to them." The question raised by the motion of the appellant does not in this case go to the *jurisdiction* of the Court below, and the case does not, therefore, fall within the rule relied on by the appellant.

Where, in actions of replevin, the property is taken under the writ, and there is a verdict for the plaintiff, the judgment is entered for the property replevied and the damages and costs. 1 *Poe's P. & P.,* Sec. 253; 2 *Poe's P. & P.,* Sec. 445. In the case of *Benesch v. Weil, supra,* the Court, after stating that the goods had not been taken under the writ, and that the writ had been returned "eloigned," said: "Thereupon the plaintiff amended his declaration, and changed its form of allegation from the *detinuit* to the *detinet.* The difference resulting from the form of allegation is this, that where the declaration is in the *detinuit,* the plaintiff, if he recovers, has adjudged to him the right of possession of the goods and chattels, and damages for their detention only. But where the goods and chattels have been eloigned, or otherwise withheld from the execution of the writ by the act of the defendant, and the declaration is in the *detinet,* the plaintiff, if he be entitled to recover, is entitled to have awarded him as well the value of the goods as damages for their detention." Section 118 of Art. 75 of the Code provides: "In all actions of replevin where the defendant shall have been duly summoned and return shall have been made by the sheriff that either all or some portion of the chattels described in the writ

have been eloigned, the plaintiff, having duly established his
right of possession to all or any portion of the chattels de-
scribed in the writ and the illegal detention of the same from
him by the defendant, shall be entitled on verdict to a judg-
ment for the return of such portion of said chattels as may
have been eloigned, or for their value as found by the ver-
dict, as well as for any of said chattels actually taken under
the writ, together with damages for the detention of all chat-
tels mentioned in the writ which the jury shall have found
were unlawfully detained from him by the defendant."

In this case the property was replevied and delivered to
the plaintiff, and the judgment in favor of the plaintiff should
have been for the property replevied, and damages for its de-
tention and costs of suit, and not in the alternative for the
property replevied "or their value, $250.00." The property
having been taken under the writ, and the verdict being in
favor of the plaintiff, the plaintiff was entitled to a judgment
for the property, and could not be required to accept in lieu
of the property its value as ascertained by the Court. But
as there is no appeal by the plaintiff, and as there is no
reversible error in any of the rulings of the Court below
brought up for review by the present appeal, the judgment
will be affirmed.

*Judgment affirmed, with costs.*