671 A.2d 962

**Thomas R. WALLANDER**

v.

**Harold BARNES**

**No. 71, Sept. Term, 1995.**

Court of Appeals of Maryland.

Feb. 14, 1996.

Certiorari to the Circuit Court for Montgomery County; J. James McKenna, Judge.

Donald F. Chiarello, Towson, for Petitioner.

Walter E. Laake, Jr. (Joseph, Greenwald & Laake, P.A. Greenbelt, on brief), for Respondent.

Argued before MURPHY, C.J.; ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL, and RAKER, JJ.

RODOWSKY, Judge.

This case was filed in the District Court of Maryland as an action of replevin. The plaintiff, with lease financing, purchased a Mercedes automobile from a consignee who did not

pay the consignor. The consignor, without lien or legal process, seized the vehicle from the possession of the plaintiff. The writ of replevin was never issued or denied, and, at trial, the requested relief was limited to damages. At issue here is the measure of damages, but the issue is complicated by the plaintiff's contention that the damages claimed are awardable in replevin, and thus may exceed the ordinary limitation on the monetary jurisdiction of the District Court.

In December 1986, the plaintiff, Thomas R. Wallander (Wallander), purchased a 1980 Mercedes 300SD automobile from Domino Motors, located in Reisterstown, Maryland, for the price of $15,500. Wallander dealt with one Paul Randazzo, Jr. (Randazzo), the owner of Domino Motors.

Wallander financed the purchase through Chesapeake Industrial Leasing Company, Inc. (Chesapeake). Plaintiff's contract of sale with Domino Motors shows "T.R. Wallander" as the purchaser of the vehicle and that the certificate of title is to be issued by the Motor Vehicle Administration in the name of Chesapeake.

Wallander paid Domino Motors by two checks, one in the amount of $15,500 drawn on Chesapeake's account and the other in the amount of $314 for sales tax and licensing fees drawn on Wallander's personal account. Domino Motors issued Wallander a temporary registration. In a separate, though related, transaction on the same day Wallander sold his 1979 Cadillac to Domino Motors for $3,500. Randazzo transferred the license plates from Wallander's 1979 Cadillac to the Mercedes.

The lease between Wallander and Chesapeake was for a term of thirty-six months. Wallander made an advance payment of $5,554.50 and agreed to make two successive annual payments of $5,290, plus sales tax. At the end of the lease, Wallander had the option to purchase the vehicle for an additional $3,000, or he could return it in good condition.

By early 1987 Chesapeake had not received the title to the vehicle. Wallander's subsequent investigation revealed that Joseph Lange, a/k/a Joseph Langehennig, (Lange), acting as

the agent for Harold Barnes (Barnes), d/b/a Barnes Used Cars, had delivered the Mercedes to Domino Motors to "show," *i.e.,* on consignment.

Randazzo made only part payment to Barnes, by transferring to the latter the 1979 Cadillac which Wallander had sold to Randazzo. Thereafter Barnes caused Randazzo to be charged with theft. He was acquitted. Barnes then asked Lange to "get my car."

On July 3, 1987, someone towed the Mercedes away from Wallander's place of employment. The vehicle was delivered to Lange, whose wife returned to Wallander personal property that had been in the vehicle. Lange did not immediately deliver the Mercedes to Barnes, apparently because Lange claimed that some money was due to him by Barnes.

On or about July 14, 1987, Wallander arranged the loan from Barnes of a car for Wallander to drive while the differences between Lange and Barnes concerning the Mercedes remained unresolved. This loaned vehicle was a used Plymouth station wagon. In early September 1987, Barnes repossessed the station wagon. That repossession is not the basis of the claim in this action.

On September 4, 1987, Wallander sued to recover the Mercedes from Barnes and Lange in an action of replevin filed in the District Court, sitting in Montgomery County. Orders were issued for the defendants "to appear and show cause at a time stated therein why the property should not be returned to the plaintiff." Maryland District Rule (M.D.R.) BQ43. Barnes was served without difficulty, but Wallander encountered a great deal of difficulty in serving Lange, resulting in a series of orders rescheduling the show cause hearing. After Lange was served and appeared through counsel, further postponements delayed the first District Court hearing in this "replevin" case to February 9, 1989.

Meanwhile, Barnes had obtained possession of the Mercedes in late 1987 and, in February 1988, transferred the vehicle to a dealer in North Carolina, with the right in Barnes to reacquire it.

The February 9, 1989 hearing was held before Judge Jerry H. Hyatt. In opening statement Wallander advised the court that he had "learned in February of 1988, [that] Mr. Barnes had sold the car ... to somebody who we've never been able to discover who or where, therefore we've never been able to bring that person into these proceedings." Wallander outlined that he would prove that the value of the Mercedes at the time of the taking was approximately $17,000, that the interest on the purchase price was $8,924, and that "[h]e spent $2,800 in car rentals before learning that the Mercedes had been sold, and that it's not going to be available in this replevin, and we're not going to get it back."

At the conclusion of the plaintiff's case further proceedings were postponed until a transcript could be obtained for use in a motion for judgment by the defendants. At the resumed trial on April 11 Judge Hyatt granted that motion, ruling that, because of the lease from Chesapeake, Wallander had no standing. Wallander noted an appeal to the Circuit Court for Montgomery County.

We are advised that Chesapeake, on October 11, 1989, filed an action in replevin against Barnes and Lange in the District Court sitting in Montgomery County. Barnes alone had been served when the matter came on for hearing on November 15, 1989 before Judge Edwin Collier. Judgment was in favor of Barnes who advises us that Judge Collier held that Chesapeake was not entitled to immediate possession.

Prior to the hearing on Chesapeake's claim against him, Barnes had reacquired the Mercedes from the North Carolina dealer. After Barnes prevailed in Chesapeake's action, he sold the car to a dealer in the District of Columbia.

In November 1990 the Circuit Court for Montgomery County (Cave, J.) reversed the judgment entered by Judge Hyatt in *Wallander v. Barnes* and remanded this case to the District Court. There is no contention that this judgment of reversal and remand embodied any rulings on matters of law that would affect disposition of the issues before this Court.

After the Mercedes had been converted, Wallander continued, albeit irregularly, to pay Chesapeake under the lease until the total lease payments, together with late charges, had been paid to Chesapeake. Then, in September 1991, Wallander paid the $3,000 agreed residual value to Chesapeake because the lease required him either to exercise the purchase option or to return the car.

Following remand to the District Court the action now before us was heard by Judge Dennis M. McHugh. He ruled that Barnes was estopped to deny Lange's authority to confer the power on Randazzo to transfer title and possession of the Mercedes to Wallander. That ruling is not questioned in the review before us.

Wallander argued to Judge McHugh that the action continued to be in replevin, but Judge McHugh ruled that the proceedings were in detinue. Judge McHugh noted that a writ of replevin had never issued and that, by the time of the first hearing before Judge Hyatt, it would have been pointless to issue the writ of replevin because the Mercedes was no longer in Barnes's possession. He said that the circumstances at that time were as if the car no longer existed.

The court concluded that Wallander's action had been converted to detinue by operation of M.D.R. BQ44. That rule in part provides that "[i]f issuance of the writ of replevin is denied, the action shall proceed in detinue."

The court further reasoned that, at the time of the taking in July 1987, Wallander did not own the Mercedes; rather he had the right to possess it only for the period for which Wallander had paid rent. Thus, Wallander could not recover the full value of the Mercedes, but only damages for its detention. Inasmuch as Wallander's unused portion of the prepaid lease period, at the time of conversion, was approximately the second half of the first year of the lease term, damages for deprivation of possession, in the court's view, could be awarded only for that period.

Alternatively, Judge McHugh held that the doctrine of avoidable consequences prevented Wallander from obtaining

loss of use damages for any period after the first year of the lease. He ruled that payments by Wallander made to Chesapeake after Barnes and Lange had retaken possession of the Mercedes were "voluntary payments." The court said:

> "The supervening repossession by Barnes and Lange could not reasonably have been foreseen and it completely frustrated the purpose of the contract between Wallander and the leasing company, Chesapeake. Briefly stated, had Wallander withheld payments on the lease so long as the car remained out of his possession, the principle of commercial frustration should have been a complete defense to an action by the leasing company for lease payments."

The District Court entered judgment in favor of Wallander for $3,752.25. The judgment aggregated three components: $2,777.25, representing the second half of the first lease year for which rent had been prepaid, the $500 down payment on the purchase from Randazzo,[1] and $475 for auto insurance for the first year of the lease.[2]

Wallander again appealed to the Circuit Court for Montgomery County where the matter was reviewed on the record by Judge James McKenna. He agreed with Judge McHugh that the action had been converted to detinue and that Wallan-

---

1.  Wallander had paid a $500 deposit from his funds. It is not clear whether that deposit was refunded to Wallander when the check for $15,500 from Chesapeake was delivered to Domino Motors. If not refunded, then it would seem that Domino Motors owed Wallander $500. The District Court seems to have treated the deposit as part of Wallander's lost use of the vehicle.

2.  On remand to the District Court Wallander also sought punitive damages. Judge McHugh found as a fact that Barnes and Lange acted in the belief that they had a right to seize the Mercedes and that there was no evidence to show the state of mind required for an award of punitive damages. *See Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633, *reh'g denied*, 325 Md. 665, 602 A.2d 1182 (1992). Our grant of Wallander's certiorari petition embraced the punitive damage issue. We hold that Judge McHugh's fact-finding was not clearly erroneous. Indeed, Wallander seemingly conceded at argument in this Court that the test for punitive damages was not satisfied when the significance was pointed out to Wallander of his statement that Barnes acted under the mistaken advice of counsel.

der's damages were limited to amounts paid in the second half of the first year of the lease, or alternatively, limited by Wallander's failure to mitigate because the lease was commercially frustrated.[3]

Wallander petitioned this Court for the writ of certiorari which we granted. The petition includes the question of "[w]hether the Circuit Court erred in failing to award Petitioner the full measure of compensatory damages...." That question subsumes the other questions in the petition concerning the trial courts' holdings on mitigation of damages. In this Court Wallander, by brief and oral argument, submits that his replevin action was not converted to detinue, and that he is entitled to damages in replevin measured by the full value of the Mercedes at the time of taking, together with additional damages. Barnes[4] submits that the analysis by the trial courts was correct. He further submits that the issue of damages in replevin was not included in the certiorari petition and should not be considered. Underlying these arguments is the issue of whether the monetary jurisdiction of the District Court is limited or unlimited in this case.

Under Md.Code (1974, 1995 Repl.Vol., 1995 Cum.Supp.), § 4–401(2) of the Courts and Judicial Proceedings Article (CJ), "the District Court has exclusive original civil jurisdiction in ... [a]n action of replevin, regardless of the value of the thing in controversy." If, however, Wallander's action became, in effect, "[a]n action in contract or tort," CJ § 4–401(1), then the District Court's jurisdiction in this case would be limited to $10,000. Section 4–401(1) was amended to increase the maximum monetary jurisdiction "in contract or tort" from $10,000 to $20,000 by Chapter 557 of the Acts of

---

3. Barnes also argued before Judge McKenna that the judgment entered by Judge Collier in favor of Barnes and against Chesapeake was *res judicata* as to Wallander's claim. Judge McKenna rejected that argument. Barnes did not raise the *res judicata* issue by a conditional cross-petition for certiorari so that the issue is not before this Court.

4. Lange neither briefed nor argued as a respondent in this Court.

1991, effective January 1, 1992, well after the action involved here.

Consequently, we reject Barnes's argument that the certiorari petition does not embrace whether this action remained one in replevin. The issue of the proper measure of damages necessarily involves classifying the cause of action, at least as to whether it is replevin, and, if so, the extent to which damages are awardable in replevin. In any event, because we shall remand for further proceedings, as explained below, we should clarify the action and the measure of damages therein for the guidance of the District Court.

## I

In this Part I we consider whether damages measured by the value of the goods are today recoverable in replevin. The analysis set forth below concludes that, although at one time market value damages seemingly were recoverable in replevin under the circumstances presented here, that use of replevin may have been extinguished in 1962. In any event, that use of replevin no longer remained available after replevin was substantially modified from its common law form by legislation and rules changes effected in 1973 following *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

Replevin "may be said to be the appropriate remedy in all cases where the object of the suit is to recover possession of specific goods and chattels, to the possession of which the plaintiff claims to be entitled at the time of instituting the suit." 2 J. Poe, *Pleading and Practice* § 425, at 417 (1925 Tiffany ed.) (2 Poe). The action could be commenced simply by filing with the court clerk a bond in double the amount of the value of the goods to be seized. *Id.* § 426, at 417. If the bond were approved by the clerk, the writ issued to the sheriff who undertook to seize the goods described in the writ. *Id.* § 427, at 419. If the writ were successfully executed by the sheriff, all of the goods replevied were delivered to the plaintiff. *Id.* § 428, at 419. No declaration was required to be filed at the time of instituting a replevin action, although a

declaration might be filed at that time. *Id.* § 430, at 420. When a declaration was filed at the commencement of the action, it alleged that the defendant unjustly detains the goods. This was known as a declaration "in the *detinet.*" *Id.* When the plaintiff deferred filing the declaration until after the writ was successfully executed, the pleading alleged that the defendant unjustly had detained the goods. This was known as a declaration "in the *detinuit.*" *Id.* If the sheriff succeeded in seizing only some, but not all, of the goods sought, the declaration properly was to be in the *detinet* as to the part not replevied and in the *detinuit* as to the part delivered to the plaintiff. *Id.*

This distinction affected the measure of damages. In *Benesch v. Weil,* 69 Md. 276, 14 A. 666 (1888), a replevin action, this Court reversed and remanded because of a failure to grant the plaintiff's requested instruction on damages. The jury should have been told that if it found that the defendant had locked up the goods and would not permit the sheriff to take the same, then the jury could award to the plaintiff the value of the goods. *Id.* at 281–82, 14 A. at 667–68. The Court, speaking through Chief Judge Alvey, said:

> "[W]here the declaration is in the *detinuit,* the plaintiff, if he recovers, has adjudged to him the right of possession of the goods and chattels, and damages for their detention only. But where the goods and chattels have been eloigned, or otherwise withheld from the execution of the writ by the act of the defendant, and the declaration is in the *detinet,* the plaintiff, if he be entitled to recover, is entitled to have awarded him as well the value of the goods as damages for their detention. The action of replevin in this latter form, in respect to the amount of the recovery, is not materially different from an action of trover."

*Id.* at 279, 14 A. at 666 (citations omitted); *see also* 2 Poe § 443, at 429. The Court cited primarily to secondary sources.

Also in 1888 the General Assembly recognized that the value of goods could be awarded as damages in replevin. *See* Chapters 269 and 417 of the Acts of 1888. These statutes,

without change, remained codified in former Article 75, "Pleadings, Practice and Process at Law," until they were repealed by Chapter 36 of the Acts of 1962. *See* 1962 Md. Laws at 101. Chapter 417, dealing exclusively with replevin, provided that, as to chattels returned eloigned, the verdict should be either for the value of the goods or for the return of the eloigned goods.[5] Chapter 269 dealt with both replevin and detinue. It provided that, where alternative judgments were entered, the judgment was enforceable by a writ in the nature of a capias in withernam, unless the court ordered otherwise or the plaintiff agreed to accept the value of the goods and damages for detention.[6] Chapter 269 further required that every judgment in detinue and in replevin separately specify the value of the goods and damages for their detention.[7]

---

**5.** Chapter 417 of the Acts of 1888 was codified in Md.Code (1957) as Art. 75, § 58. Section 58 read in full as follows:

> "In all actions of replevin where the defendant shall have been duly summoned and return shall have been made by the sheriff that either all or some portion of the chattels described in the writ have been eloigned, the plaintiff, having duly established his right of possession to all or any portion of the chattels described in the writ and the illegal detention of the same from him by the defendant, shall be entitled on verdict to a judgment for the return of such portion of said chattels as may have been eloigned, or for their value as found by the verdict, as well as for any of said chattels actually taken under the writ, together with damages for the detention of all chattels mentioned in the writ which the jury shall have found were unlawfully detained from him by the defendant."

**6.** Historically, capias in withernam was available, upon application to the court, in a replevin action in which the writ of replevin was returned eloigned. 2 Poe § 436, at 423. A writ of capias in withernam directed "the sheriff to seize *other* goods and chattels of the defendant to the value of the goods eloigned." *Id.*

**7.** Chapter 269 of the Acts of 1888 was codified in Md.Code (1957) as Art. 75, § 59. Section 59 read in full as follows:

> "Whenever in replevin or detinue there shall be a judgment in the alternative for the return of chattels or the payment of their value, the judgment for the return or delivery of the goods may be enforced by a writ in the nature of a writ of capias in withernam, and by attachment of the party or parties adjudged to return or deliver the same, or either, unless the court, on good cause shown, shall otherwise

*Burrier v. Cunningham Piano Co.,* 135 Md. 135, 145, 108 A. 492, 496 (1919), repeated the rules from *Benesch v. Weil,* set forth above, and quoted Chapter 417 of the Acts of 1888 in a dicta passage dealing with the verdict. *Burrier* was a defendant's appeal from a judgment for a return of the goods " 'or their value, $250.00.' " *Id.* at 146, 108 A. at 496. Because the goods, a piano, had been replevied and returned to the plaintiff, "the judgment in favor of the plaintiff should have been for the property replevied, and damages for its detention and costs of suit. . . ." *Id.*

When this Court, by order dated July 17, 1958 and effective January 1, 1959, adopted the first Rules of Procedure governing Special Proceedings, replevin was included as Rule 1160. When the Special Proceedings Rules were completed and adopted by this Court effective January 1, 1962, 1958 Md.Rule 1160 became subtitle BQ ("Replevin") of Chapter 1100. The 1962 BQ Rules were, in general, a statement of the then existing practice in replevin under common and statutory law. See 9B Md.Code (1957, 1963 Repl.Vol.), Chapter 1100, Subtitle BQ. Under that practice the writ of replevin was issued by the court clerk upon the posting of a bond and prior to any hearing on entitlement to possession.

The 1962 BQ Rules addressed damages in two places, Rule BQ44, dealing with the declaration, and Rule BQ50, dealing with the writ of capias in withernam. Rule BQ50 (1962) uses the term, "capias in withernam," to describe a writ which is issued after entry of a judgment in the alternative and under which a plaintiff obtains return of the property sought in the replevin action.[8]

---

order, or unless the party or parties entitled to such return or delivery shall agree of record to accept the value of the chattels as ascertained by the judgment in lieu of such return or delivery, but nothing herein contained shall prevent the party entitled to such judgment from having his execution besides for the damages, if any, given for the detention and his costs, and every judgment in detinue and replevin, and every verdict therein shall ascertain separately the value of the goods and chattels and the damages, if any, for their detention."

8.  Rule BQ50 (1962) read:

The BQ Rules permitted the declaration in replevin to be filed either with the bond or after the writ of replevin had been executed. 1962 Rule BQ44. In the former instance (*detinet*) the declaration "shall claim the return of said property plus damages for its detention." 1962 Rule BQ44.a. When the declaration was filed after the return of the property to the plaintiff (*detinuit*), the declaration "shall claim the property plus damages for its detention." 1962 Rule BQ44.b.

After all of the Special Proceedings Rules were in effect, the General Assembly, on the recommendation of the Rules Committee, enacted Chapter 36 of the Acts of 1962, effective June 1, 1962, repealing a mass of procedural statutes. Among the statutes repealed were those relating to replevin, including Md.Code (1957), Art. 75, §§ 58 and 59.

Thus, as of June 1, 1962, there was no statutory recognition for damages in replevin measured by the full value of the property sought to be replevied. Any foundation for such damages apparently rested on common law and on the recognition in Rule BQ50 that such damages were available under some circumstances. For purposes of the instant decision, we shall assume that the 1962 repeal of the replevin statutes and the adoption of Rule BQ50 did not limit the common law rule which, as articulated in *Benesch v. Weil*, allowed damages measured by the value of the goods, where the goods "have been eloigned, or otherwise withheld from the execution of the writ by the act of the defendant...." 69 Md. at 279, 14 A. at 666. In the instant matter, Barnes's transfer of the Mercedes to an out-of-state dealer, with the right reserved in Barnes to reacquire the vehicle, arguably satisfied the alternative prong of the rule stated in *Benesch*, because a writ of replevin, although never issued, would have been returned eloigned if it had been issued.

---

"Where the writ of replevin has been returned eloigned, it shall be reissued as a matter of course upon request of the plaintiff. Where a judgment for the return of the property or the payment of its value has been entered for the plaintiff, upon motion duly made, the plaintiff may obtain a writ of *capias in withernam*, and may have execution for damages and costs."

The wholesale repeal of procedural statutes in 1962 required some fine tuning. That was effected by Chapter 575 of the Acts of 1966, one of the purposes of which, as stated in its title, was "to reinstate certain portions of provisions of the Code of Public General Laws of Maryland erroneously repealed in prior Acts of this nature." One of the statutes reinstated was former Article 75, § 59. In its reincarnated form, however, the statute is limited to detinue, whereas, prior to its 1962 repeal, the statute applied to both replevin and detinue. *Compare* Md.Code (1957), Art. 75, § 59 and Md. Code (1957, 1969 Repl.Vol.), Art. 75, § 60A.[9] Clearly the General Assembly had intended in 1962 to repeal the statutory basis for an alternative judgment in replevin.

The 1966 enactment of § 60A prompted revision of the BQ Rules. The caption of the subtitle was enlarged to "Replevin and Detinue," and new Rule BQ53, "Detinue," was added, effective September 1, 1967. See 9B Md.Code (1957, 1971 Repl.Vol.), Rule BQ53.[10] A Rules Committee note accompany-

---

9. Article 75, § 60A read as follows:
   **"Enforcement of judgment in the alternative.**
   "Whenever in detinue there shall be a judgment in the alternative for the return of chattels or the payment of their value, the judgment for the return or delivery of the goods may be enforced by a writ in the nature of a writ of capias in withernam, and by attachment of the party or parties adjudged to return or deliver the same, or either, unless the court, on good cause shown, shall otherwise order, or unless the party or parties entitled to such return or delivery shall agree of record to accept the value of the chattels as ascertained by the judgment in lieu of such return or delivery, but nothing herein contained shall prevent the party entitled to such judgment from having his execution besides for the damages, if any, given for the detention and his costs, and every judgment in detinue, and every verdict therein shall ascertain separately the value of the goods and chattels and the damages, if any, for their detention."

10. Section e, "Verdict," of present Md.Rule BQ53 ("Detinue") and of present M.D.R. BQ51, "Detinue," both read in 1971 as follows:
   "e. *Verdict.*
   1. Generally.
   If the verdict is for the plaintiff, it shall be in the alternative for the return of the property sued for, or its value, plus damages, if any, for its detention. The verdict shall separately state the value of the property.

ing the 1967 adoption of Rule BQ53 gave the following explanation:

> "The substantive aspects of section e are to be found in Code, article 75, § 60A (Laws of 1966, Chapter 575), and are restated in this section for the convenience of the bar in utilizing the detinue rules. At common law the defendant had the option to either return the goods or pay their value, plus damages, if any, for their detention, POE (6th ed.), Vol. 1, § 156. Code, article 75, § 59 of the 1957 Code (originally enacted in 1888, inadvertently repealed in 1962 and reenacted in 1966, and designated section 60A) apparently was intended to give the plaintiff the right to demand the return of the property unless the court shall otherwise order for good cause shown. Attention is invited to the fact that the verdict in detinue *must* be in the alternative for the return of the goods or their value. See Code, article 75, § 60A. See also 16 Am.Jur. section 12."

The precedent on which Wallander rests his argument for the award of value damages in replevin, *General Motors Acceptance Corp. v. Petrillo*, 253 Md. 669, 253 A.2d 736 (1969), was decided while Maryland replevin practice was principally governed by the 1962 BQ Rules as described above. In the *GMAC* case the appellant had properly repossessed its debtor's truck, to which the debtor's camper was attached. *Id.* at 676–77, 253 A.2d at 740–41. The debtor, Petrillo, successfully replevied the camper, only to find that it had been physically damaged while in the possession of GMAC and that two guns that had been in the camper were missing. *Id.* at 671–73, 253 A.2d at 738. The trial court awarded damages to Petrillo that included the cost of repair of the camper ($264.20) and the

---

2. Return of Property.

Unless the court shall otherwise order for good cause shown or unless the plaintiff shall agree of record to accept the value of the property as fixed by the verdict in lieu of its return, the plaintiff may enforce return of the property by seizure of the property by the sheriff, by writ of *capias in withernam* or attachment of the party against whom judgment was entered, or any of them, and may have execution for the damages, if any, for the detention of the property and costs."

value of the guns ($123). *Id.* at 672, 253 A.2d at 738. This Court treated the claim for the missing guns as the same type of claim as that for physical damage to the camper, *i.e.,* compensation for actual injury to the property that was replevied. *Id.* at 673, 253 A.2d at 739. Thus, *GMAC* treats the facts as presenting a successful replevin in which the plaintiff's judgment is for return of the property and damages for its detention. *GMAC* does not segregate the missing contents of the camper from the camper itself and does not treat the contents as eloigned. Thus, *GMAC* is of very little help in the instant matter.

The BQ Rules were drastically revised following the Supreme Court's 1972 decision in *Fuentes,* holding that due process was violated by prehearing seizures of property as permitted under historic replevin practice. 407 U.S. at 96–97, 92 S.Ct. at 2002–03. Maryland's response to *Fuentes* was a package of changes in court rules and in statutes that was recommended by a joint committee of legislators and members of the Rules Committee. *See* Chapter 880 of the Acts of 1973, effective as an emergency measure on May 24, 1973; Minutes of the Rules Committee for Saturday, January 20, 1973, on file in the Rules Committee office. The overriding purpose and unifying theme of these changes were to provide a judicial hearing early in the procedure, so that the writ of replevin could issue as expeditiously as constitutionally and practically possible.

Due process was satisfied under the 1973 changes by a preseizure hearing on a show cause order. *See* M.D.R. BQ43 and M.D.R. BQ44. It was concluded that the District Court was probably better able to schedule an early show cause hearing and, for that reason, exclusive original jurisdiction over replevin actions was placed in the District Court, without regard to the value of the property. *See* Chapter 880 of the Acts of 1973; CJ § 4–401(2).

M.D.R. BQ44 concerning the show cause hearing provides:

"Upon the hearing on the order to show cause, the court shall make a determination whether the plaintiff, with rea-

sonable probability, is entitled to return of the property claimed. If the court so determines, the writ of replevin shall issue, upon the filing by the plaintiff of a replevin bond.... If issuance of the writ of replevin is denied, the action shall proceed in detinue."

It is the last sentence of this rule on which the trial courts relied in holding that Wallander's replevin action was converted to detinue. M.D.R. BQ44, however, does not directly apply to this case. By the time Wallander had effected service of the show cause order and the statement of claim was heard in the District Court, he no longer sought return of the Mercedes, and the court never determined whether the writ of replevin should issue. Instead, the parties went directly to the merits of a damage claim.

The purpose of the last sentence of M.D.R. BQ44 in the post-*Fuentes* changes is to clarify the result of the denial of a writ of replevin at the show cause hearing. Finding at the show cause hearing that a probability of entitlement has not been established is not a final judgment on the merits. Thus, if the writ of replevin is denied, the court does not dismiss the action. The plaintiff continues to have the opportunity at the trial on the merits to prove entitlement to the possession of the property, and at that time to obtain a court order for the property's return. Such a post-trial judgment for return of the goods, however, is not replevin and it does not raise procedural due process problems under *Fuentes*. A post-trial judgment for possession also fits within the 1966 statute, Rule BQ53, and M.D.R. BQ51, all dealing with the action of detinue.

The 1973 rules changes also abolished the *detinet-detinuit* distinction by repealing former Rule BQ44 ("Declaration"). All replevin actions are now commenced by statement of claim; there is no option to postpone filing the statement of claim. See present M.D.R. BQ42 ("The statement of claim shall allege that the defendant unjustly detains the property and shall claim the return of the property and may claim damages for its detention.").

In addition, the post-*Fuentes* changes addressed the Maryland version of capias in withernam. The legislative component of the changes amended, *inter alia,* former Article 75, § 60A, principally to delete the provisions for body attachment of the defendant and for a court override of a plaintiff's decision, under an alternative judgment, to take redelivery of the chattels.[11] Concurrently, the rules relating to capias in withernam were amended. From 1973 to 1984 Maryland Rule BQ50 read:

"Where the writ of replevin has been returned eloigned, and a judgment for the return of the property or the payment of its value has been entered for the plaintiff, upon motion duly made, the plaintiff may obtain a writ of *capias in withernam* and may have execution for damages and costs."

During the same time period M.D.R. BQ49 was virtually identical to Rule BQ50.

The 1973 amendments to former Article 75, § 60A became part of the code revision project's Courts and Judicial Proceedings Article, enacted by Chapter 2 of the Acts of the First Special Session of 1973. The statute is presently CJ § 11–104, reading:

"(a) *In general.*—In an action of detinue a plaintiff may recover the personal property and damages for the wrongful detention of the property. The judgment or verdict, if jury

---

11. Former Art. 75, § 60A, as amended by Chapter 880 of the Acts of 1973, read:

"If in detinue there is a judgment in the alternative for the return of chattels or the payment of their value, the judgment for the return or delivery of the goods may be enforced by a writ in the nature of a writ of capias in withernam, unless the party or parties entitled to the return or delivery agree of record to accept the value of the chattels as ascertained by the judgment in lieu of the return or delivery, but nothing herein contained prevent[s] the party entitled to the judgment from having his execution besides for the damages, if any, given for the detention and his costs. Every verdict and judgment in detinue shall ascertain separately the value of the goods and chattels and the damages, if any, for their detention."

trial is elected, shall separately specify the value of the property and damages.

"(b) *Enforcement of judgment in alternative.*—If the judgment is rendered for the return of the property, the plaintiff may enforce the judgment by a writ of capias in withernam unless the court for good cause show[n] orders otherwise or the plaintiff agrees on the record to accept the value of the property in lieu of its return."

Neither the Maryland District Rules nor Special Proceedings Subtitle BQ today use the term, "capias in withernam." M.D.R. BQ49 (1973) and Md.Rule BQ50 (1973) were deleted in 1984 in conjunction with the adoption of revised Maryland Rules. CJ § 11–104 is now implemented procedurally by Rules 2–647 and 3–647, both of which in part provide:

"When a judgment awards possession of property or the payment of its value, in the alternative, the instructions [to the sheriff for service] shall also specify the value of the property, and the writ shall direct the sheriff to levy upon real or personal property of the judgment debtor to satisfy the judgment if the specified property cannot be found."

Based on the foregoing background, we hold that damages measured by the full value of the goods sought are not recoverable in replevin. The 1962 repeal of the statute that expressly recognized market value damages in replevin and detinue, and the 1966 reenactment of such a statute limited only to detinue, clearly demonstrate a legislative intent to limit replevin to the pre-trial seizure of the property, together with any damages for its detention. The 1973 allocation exclusively to the District Court of pre-seizure hearings in replevin cases was designed to expedite issuance of the writ. That allocation was not designed to confer unlimited monetary jurisdiction on the District Court in the award of damages in actions commenced in replevin but in which that writ was not issued, or, if issued, was not executed before trial on the merits. To the extent that Nineteenth Century Maryland common law permitted the recovery of market value damages in replevin where the writ of replevin could not be executed,

we hold that that common law rule has been abrogated by the later, substantial changes effected in replevin by statutes and Rules of Procedure.

Modern replevin in Maryland is a pre-judgment, but post-probable cause determination, seizure. If probable cause is not established, so that replevin is denied, the action is no longer replevin, it is detinue. M.D.R. BQ44. If probable cause is established and the writ issues, but the property cannot be seized before trial on the merits, the action is no longer replevin. Under those circumstances, if the plaintiff still desires at least the option of obtaining return of property, the value of which is within the monetary jurisdiction of the District Court, after a District Court judgment on the merits, the plaintiff properly should amend to detinue. *See* M.D.R. 3–341. If successful on the merits, the plaintiff may then recover the property by a District Court judgment for return of the property. CJ § 11–104; M.D.R. BQ51; Rule 3–647.

Where (1) probable cause is not established or, if established, the property cannot be seized before trial, (2) the value of the property exceeds the monetary jurisdiction of the District Court, (3) the plaintiff has not demanded a jury trial, and (4) the plaintiff desires a judgment for the goods or for their value, the plaintiff's recourse is to dismiss, voluntarily and without prejudice, and to commence a new action in a circuit court.[12] CJ § 11–104; Rules BQ53 and 2–647.

## II

■ In the instant matter, Wallander never sought a pre-judgment seizure of the Mercedes. Although he made no formal amendment of his statement of claim, he sought only damages from the moment he first appeared before Judge Hyatt. It follows that judgment in the matter before us was not entered in a replevin action.

---

12. Demands for jury trials in replevin actions are addressed in CJ § 4–402(e)(2).

Nor did Wallander seek a post-judgment return of the Mercedes. His requested remedy of a judgment that included the market value of the Mercedes was clearly an election at the beginning of the hearing on the merits not to seek a judgment "for the return of the property" under CJ § 11–104(b). In addition, Judge McHugh, although proclaiming Wallander's action to be detinue, did not specify the value of the property in the judgment. CJ § 11–104(a). Consequently, the action or remedy was not that of detinue.

■ Here, both respondents were found to have converted the Mercedes which was no longer recoverable from them. Wallander requested damages that included the market value of the Mercedes. Where goods have been converted and not returned by the tortfeasor, an action in trover lies. 1 J. Poe, *Pleading and Practice* § 66, at 41 (1925 Tiffany ed.) (1 Poe). Damages in trover classically have been measured by the value of the goods at the time of the conversion, together with interest from such time as the trier of fact might deem proper. *See Keys v. Chrysler Credit Corp.,* 303 Md. 397, 415, 494 A.2d 200, 209 (1985); *Checkpoint Foreign Car Serv., Inc. v. Sweeney,* 250 Md. 251, 253, 242 A.2d 148, 149 (1968); *Saunders v. Mullinix,* 195 Md. 235, 240, 72 A.2d 720, 722 (1950); *Merchants' Nat'l Bank v. Williams,* 110 Md. 334, 352, 72 A. 1114, 1117 (1909); *Swartz v. Gottlieb–Bauernschmidt–Straus Brewing Co.,* 109 Md. 393, 403, 71 A. 854, 857 (1909); *Bonaparte v. Clagett,* 78 Md. 87, 105–06, 27 A. 619, 623 (1893); *Heinekamp v. Beaty,* 74 Md. 388, 393, 21 A. 1098, 1098 (1891); *Hopper v. Haines,* 71 Md. 64, 76, 18 A. 29, 31, *reh'g denied,* 71 Md. 64, 20 A. 159 (1889); *Levi v. Booth,* 58 Md. 305, 318–19 (1882); *Corner v. Mackintosh,* 48 Md. 374, 389 (1878); *Herzberg v. Adams,* 39 Md. 309, 313 (1874); *Moore v. Schultz,* 31 Md. 418, 423 (1869) (trespass *de bonis asportatis* ); *Thomas v. Sternheimer,* 29 Md. 268, 272–73 (1868); *Stirling v. Garritee,* 18 Md. 468, 474 (1862); *Kalb v. Vega,* 56 Md.App. 653, 665, 468 A.2d 676, 683 (1983), *cert. denied,* 299 Md. 427, 474 A.2d 219 (1984); 1 Poe § 219, at 172.

The Maryland rule is the general rule. 1 D. Dobbs, *Law of Remedies* § 5.13(1), at 835 (2d ed. 1993), states:

"A permanent taking of property, as in a conversion case, and a destruction of property as in a negligence case, both involve the same general type of damage to the owner. In both cases, damages are based on permanent deprivation of the property. The usual measure of general damages for either taking or destruction is the market value of the item taken or destroyed at the time and place of the taking or destruction, with alternate or supplementary measures allowed in special instances."

(Footnotes omitted).[13]

Consequently, the trial courts applied an incorrect measure of damages in this case.

## III

Wallander's status as a lessee of the Mercedes does not alter the measure of damages set forth in Part II, *supra.*

We shall assume, *arguendo*, that Chesapeake should be viewed as the owner and lessor of the vehicle, and not simply as the holder of a security interest in it. We shall further assume that Wallander is simply a lessee, and should not be viewed as the owner. Nevertheless, Wallander's "special property" gives him standing to sue for the full value of the property converted. *See* 1 Poe § 212, at 168. There the author states:

"Trover may also be maintained by a party who has a special property in the goods accompanied by a possession or a right of possession. Thus, the hirer of a horse converted by the defendant to his own use can maintain trover, for the reason that by virtue of his special property he was entitled to possession at the time of the conversion. . . .

---

**13.** For a discussion of interest as the measure of damages for loss of use in trover, see Brownstein, *What's the Use? A Doctrinal and Policy Critique of the Measurement of Loss of Use Damages,* 37 Rutgers L.Rev. 433, 437–45 (1985).

And in these cases the measure of damages is not merely the value of the plaintiff's special property, but extends to the full value of the chattel, in order to enable him to account to the general owner, to whom he is answerable."

"[B]are possession is sufficient to enable the party who has it to sustain trover against all but the true owner." *Id.* § 213, at 168.

Thus, trover to recover the full value of reaped and threshed wheat could be brought by the person who bought the wheat at a mortgage foreclosure sale that had been reported to the court by the selling trustees, although the sale had not been ratified and the buyer had not yet fully complied with the terms of sale. *Hopper v. Haines,* 71 Md. at 72–73, 76, 18 A. at 30, 31. The defendant could not set up title in another against one rightfully in possession. *Id.* at 75–76, 18 A. at 31. To the same effect is *American Dist. Tel. Co. v. Walker,* 72 Md. 454, 20 A. 1 (1890), a negligence action. The plaintiff, using his own team of horses, had hired a surrey for a day from a livery stable. *Id.* at 459, 20 A. at 1. At the end of the day the plaintiff engaged the defendant to return his team and the surrey to the stable. *Id.* at 459–60, 20 A. at 1. The defendant's servant lost control of the team, causing damage to the surrey in a resulting accident. *Id.* at 460, 20 A. at 1. This Court rejected the defendant's argument that the plaintiff could not recover the cost of repairing the surrey. *Id.* at 462–63, 20 A. at 2. This was because the hirer "was answerable to the general owner." *Id.* at 463, 20 A. at 2.

In the matter before us, the lease between Chesapeake and Wallander reinforces the common law analysis. The lease explicitly places the risk of loss of the Mercedes on Wallander. In the event of its loss or destruction, Wallander is contractually obligated either to replace the vehicle, at Chesapeake's option, or to pay the present value of the stream of rent, plus the agreed value of the residual interest.

The Maryland rule reviewed above is the general rule. Restatement (Second) of Torts § 895 (1977) in relevant part states:

"(1) ... [O]ne who is otherwise liable to another for harm to or interference with land or a chattel is not relieved of the liability because a third person has a legally protected interest in the land or chattel superior to that of the other."

Comment *c* states the history as follows:

"The common law rule was that the defendant in an action for either trespass or conversion could not set up the *jus tertii* as a defense. The reasons for the rule went back to the origins of the actions for trespass and trover, which were founded upon the plaintiff's possession of the land or chattel, rather than his title. In these actions possession was regarded as in itself a sufficient property interest to permit the plaintiff to recover, even though it was not accompanied by title or any other interest; and even a wrongful possession was sufficient. In time the rule denying the defense of *jus tertii*, as developed in the actions of trespass and trover, was extended to other actions for harm to or interference with land or chattels, such as an action on the case for negligence."

For early illustrations of the rule see *White v. Webb*, 15 Conn. 302 (1842); *Lyle v. Barker*, 5 Binn. 457 (Pa.1813); *Heydon and Smith's Case*, 13 Coke 67 (1611); J. Story, *Law of Bailments* § 414 (5th ed. 1851).

Comment *d* to Restatement § 895 presents two modern justifications for continuing the rule.

"One is that the plaintiff should not be compelled to litigate the claim of a third party who is not in court, when his right or even his possession without other right is at least clearly superior to the tortfeasor's entire absence of right. The other is that the person last in possession before the tort is the proper party to be accountable to the third person for the land or chattel or for the proceeds of the action, and to settle or litigate with him any question arising between them as to ownership or proper division."

Comment *e* states that the rule of subsection (1) applies "when the plaintiff is ... a lessee of a chattel...."

Illustration seven to § 895 is highly relevant to the instant matter.

"A rents an automobile to B for thirty days. Ten days later C steals the automobile from B. B recovers a judgment against C for conversion, for the full value of the car. The judgment is satisfied. B holds for the benefit of A the amount recovered in excess of the value of the use of the car for twenty days, but A is barred from recovery against C or from the enforcement of a judgment already obtained against him."

The judicial decisions upon which the American Law Institute relied in stating the rule of Restatement (Second) of Torts § 895(1) include cases holding or recognizing that an action for full value may be brought by a lessee or bailee. *See Railway Express Agency, Inc. v. Goodman's N.Y. & Conn. Express Corp.*, 129 Conn. 386, 28 A.2d 869 (1942); *Big Apple Super Markets of Peachtree, Inc. v. W.J. Milner & Co.*, 111 Ga.App. 282, 141 S.E.2d 567 (1965); *Brewster v. Warner*, 136 Mass. 57 (1883); *Harrington v. King*, 121 Mass. 269 (1876); *First Commercial Bank of Pontiac v. Valentine*, 209 N.Y. 145, 102 N.E. 544 (1913); *Masterson v. International & G.N. Ry. Co.*, 55 S.W. 577 (Tex.Civ.App.1900).

1 F. Harper, F. James & O. Gray, *The Law of Torts* § 2.8 (3d ed. 1996), discusses "Jus tertii in conversion of chattels." The authors conclude that

"the modern tort of conversion subjects the wrongdoer [to liability] (1) to the possessor ... for the entire value of the chattel in addition to any special damages resulting from the conversion, and this liability does not depend on the existence of the possessor's responsibility to the owner for the loss of the chattel."

*Id.* at 2:34 (footnote omitted).

Accordingly, the value of Wallander's interest in the Mercedes and concepts of commercial frustration and impossibility of performance are irrelevant. The rights of lessor and lessee, respectively, in a chattel's full value, recovered by the lessee from one who converted the chattel, are a matter

between lessor and lessee. *See* Harper, James & Gray, *supra,* § 2.8, at 2:36. Even if Wallander were not obligated under the lease to pay out the entire lease, including payment of the residual value of the Mercedes, the fact that he did so has no effect on Wallander's standing to claim damages measured by the full value of the Mercedes at the time of the conversion, with interest. Further, inasmuch as the action is not one in replevin, the damages are subject to the monetary jurisdictional limitation on the District Court which, for the subject action, is $10,000.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY VACATED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT RE-MANDING THIS ACTION TO THE DISTRICT COURT OF MARYLAND, SITTING IN MONTGOMERY COUNTY, FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPON-DENTS.*